Benjamin H. BLACKSTON, Wilmer L. Ring, John N. Turner, James N. Tanksley and Foster G. Hickox, Plaintiffs-Appellants,

v.

SHOOK AND FLETCHER INSULATION CO., et al., Defendants,

AC & S, Inc., Defendant-Appellee.

No. 83–8553.

United States Court of Appeals, Eleventh Circuit.

July 12, 1985.

R. Lanier Anderson, III, Circuit Judge, filed opinion, concurring in part and dissenting in part.

Richard H. Middleton, Jr., Ronald L. Motley, Eugene Clyde Brooks, IV, Savannah, Ga., Thomas Hart, III, Barnwell, S.C., for Blackston.

John T. Woodall, Savannah, Ga., for defendants.

Richard K. Hines V, and Richard P. Schultz, Atlanta, Ga., for Raymark Industries, et al.

Before RONEY and ANDERSON, Circuit Judges, and MORGAN, Senior Circuit Judge.

RONEY, Circuit Judge:

█ This is one of the first asbestos-related injury tort cases to come before this Court. Regardless of the theory of liability in such cases, the threshold for every theory is proof that an injured plaintiff was exposed to asbestos-containing products for which the defendant is responsible. The key to the review of a summary judgment for a defendant in such case is whether the trial court imposed an improper burden on the plaintiff to establish an issue of fact that exposure occurred. In affirming the grant of summary judgment in this case we make two holdings: *first,* the district court correctly held that recovery will require the plaintiff to show that he was exposed to defendant's asbestos-containing product by working with or in close proximity to the product; *second,* we reject the argument that we should create a judicial presumption that a plaintiff was exposed to the asbestos in a defendant's products by simply showing that he worked at a job site at a time when the defendant's asbestos-containing products were used. Applying these principles to the evidence in this case, we affirm the district court on the ground that plaintiff's evidence cannot support a finding that he worked with or in close proximity to this defendant's products.

Because this is the beginning of what apparently will be a volume of litigation in this Court concerning asbestos-related injuries, it is appropriate to comment briefly on the litigation and the approach this Court should take in these cases. Prior cases have discussed the diseases associated with exposure to asbestos fibers, including mesothelioma, asbestosis, and lung cancer. *See, e.g., Insurance Co. of North America v. Forty-Eight Insulations, Inc.,* 633 F.2d 1212, 1214 & n. 1, 1218–19 (6th Cir.1980), *cert. denied,* 454 U.S. 1109, 102 S.Ct. 686, 70 L.Ed.2d 650 (1981); *Borel v. Fibreboard Paper Products Corp.,* 493 F.2d 1076, 1083–85 (5th Cir.1973), *cert. denied,* 419 U.S. 869, 95 S.Ct. 127, 42 L.Ed.2d 107 (1974). The widespread use of asbestos products, the ambient nature of asbestos fibers, and the debilitating effects of asbestos-related diseases have resulted in a flood of litigation in courts throughout the nation. *See, e.g., Jackson v. Johns-Manville Sales Corp.,* 750 F.2d 1314, 1323 (5th Cir. 1985) *(en banc)* (noting that over 20,000 asbestos-related personal injury lawsuits have already been filed and citing studies that indicate over 21 million Americans have been significantly exposed to asbestos over the last forty years); *see also id.* at 1335–41 (Clark, C.J., dissenting) (appendix to dissent entitled "Dimensions of Asbestos Litigation"). Faced with such a burgeoning problem, the Court could take either of two approaches to deciding the asbestos cases before it: either to make broad pronouncements of law in an attempt to guide the district courts as they manage cases involving a variety of factual, legal, and socioeconomic issues, or merely to decide each case on the narrow ground that leads to a decision. The law will be better served for the Court to follow the latter course.

Benjamin Blackston, a 59-year-old pipefitter, filed claims against twenty-five defendants alleging injuries arising from exposure to asbestos-containing products between 1940 and 1975. During 1966 and 1967, Blackston was employed by Rust Engineering Company during the construction of the Riceboro Paper Mill in Riceboro, Georgia. A C and S, the only defendant involved in this appeal, is a contracting company engaged in the business of installing industrial and commercial insulation products. It appears that A C and S was a contractor at the Riceboro Paper Mill while Blackston was employed there and that A C and S used Armaspray, an asbestos-containing product of the Armstrong Cork Company, in the course of installing insulation.

The district court held that in order to establish exposure, the plaintiff would have to show that he worked in the vicinity where the defendant's insulators were using this product. Although the plaintiff could show that he worked at the Riceboro plant at the time the product was being used, his evidence did not show that he was working in the vicinity that it was being used. The district court noted that it had refused to grant summary judgment for defendants when presented with two types

of evidence. Either "the plaintiff could identify by name those insulators around whom he worked," and the insulators provided affidavits that they used asbestos-containing products, or "the insulators identified the plaintiff by name as working in the same vicinity as they worked."

The district court had before it the pleadings, and a statement of facts; two depositions of Blackston in which he could not positively identify A C and S or the asbestos-containing products as having been used at Riceboro; an affidavit of counsel with an attached periodical article submitted as a learned treatise; two affidavits of Blackston; an affidavit of Willie O. Partain, an insulator employed at Riceboro from 1966 to 1968, stating that he used Armaspray at Riceboro while working in close proximity to other trades, including pipefitters; and a deposition excerpt of Wainwright Hendrix, who worked for A C and S at Riceboro from 1966 to 1968, stating that he used A C and S products on the job.

In considering a motion for summary judgment, this evidence must be viewed in the light most favorable to the party opposing the motion for summary judgment. *Sweat v. Miller Brewing Co.*, 708 F.2d 655, 656 (11th Cir.1983); *Impossible Electronics Techniques, Inc. v. Wackenhut Protective Systems*, 669 F.2d 1026, 1031 (5th Cir. Unit B 1982). All reasonable inferences arising from the undisputed facts should be made in favor of the nonmovant, *Impossible Electronics*, 669 F.2d at 1031, but an inference based on speculation and conjecture is not reasonable. *Daniels v. Twin Oaks Nursing Home*, 692 F.2d 1321, 1326 (11th Cir.1982).

■ The affidavits and deposition excerpts contained in the record fail to provide evidence that A C and S insulators worked in proximity to plaintiff Blackston. Although Blackston in his affidavit indicated that he worked in proximity to insulators while working at the Riceboro Paper Mill, he has no idea whether those insulators were employed by A C and S or whether they were using asbestos. Although insulators employed by A C and S at Rice-

boro Paper Mill testified that they used asbestos-containing insulation products in close proximity to other trades at Riceboro Paper Mill, including pipefitters, they cannot specifically recall whether Blackston was one of those pipefitters. We therefore conclude that the district court determined correctly on the basis of the record before it that there was not a genuine issue of material fact as to whether Blackston was exposed to asbestos-containing products manufactured by A C and S.

Because proof of exposure to a particular defendant's asbestos-containing products is an essential element of plaintiff's cause of action under Georgia law, Blackston contends that the district court's requirement is too strict and that the evidence, though circumstantial, was sufficient to create a genuine issue of material fact on the exposure question. The line between circumstantial evidence sufficient to support a finding under a substantial evidence standard and evidence which merely permits conjecture or speculation is difficult to draw. But under existing Georgia and federal law, the district court appears to have done it correctly in this case.

■ Under Georgia law, "proximate cause" is an essential element of Blackston's case whether he proceeds under a strict liability or a negligence theory. *Talley v. City Tank Corp.*, 158 Ga.App. 130, 279 S.E.2d 264, 269 (1981); *see also Center Chemical Co. v. Parzini*, 234 Ga. 868, 218 S.E.2d 580, 582 (1975); *Union Carbide Corp. v. Holton*, 136 Ga.App. 726, 222 S.E.2d 105, 108–09 (1975). Blackston must satisfy this proximate cause requirement by showing that his injuries were caused by exposure to products manufactured or used by A C and S. In affirming summary judgment for the defendant in a products liability action, the Court of Appeals of Georgia stressed that the plaintiff must link a particular defendant's product to his injury in order to prevail:

Strict liability is imposed for *injuries* which are the proximate result of product defects, not for the manufacture of defective products. Unless the manufac-

turer's defective product can be shown to be the proximate cause of the *injuries,* there can be no recovery. A manufacturer has the absolute right to have his strict liability *for injuries* adjudged on the basis of *his* own marketed product and not that of someone else.

*Talley,* 279 S.E.2d at 269 (emphasis in original). The same causal connection between a defendant's dereliction and a plaintiff's injuries is required in negligence cases. *Jones v. Adamson's, Inc.,* 147 Ga.App. 282, 248 S.E.2d 514, 515 (1978); *see also Douglas v. Smith,* 578 F.2d 1169, 1175–76 (5th Cir.1978) (applying Georgia law).

Reasons behind the requirement that plaintiffs prove exposure to a particular defendant's products in order to establish proximate cause are well-stated in cases refusing to impose market-share or industry-wide liability upon asbestos manufacturers. *See Thompson v. Johns-Manville Sales Corp.,* 714 F.2d 581, 583 (5th Cir. 1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 1598, 80 L.Ed.2d 129 (1984); *Hannon v. Waterman Steamship Corp.,* 567 F.Supp. 90, 92–93 (E.D.La.1983); *In re Related Asbestos Cases,* 543 F.Supp. 1152, 1158 (N.D. Cal.1982); *Starling v. Seaboard Coast Line Railroad Co.,* 533 F.Supp. 183, 186–91 (S.D.Ga.1982). These decisions become particularly relevant when one considers that freeing the plaintiff from the requirement of proving exposure to a particular defendant's products is in effect an adoption of a market-share or industry-wide theory of liability. In *Starling,* a federal district court rejected an invitation to extend Georgia law by adopting the market-share theory of liability espoused in *Sindell v. Abbott Laboratories,* 26 Cal.3d 588, 163 Cal.Rptr. 132, 607 P.2d 924, *cert. denied,* 449 U.S. 912, 101 S.Ct. 285, 66 L.Ed.2d 140 (1980). In doing so, the court identified three reasons for declining to apply to asbestos litigation a products liability theory developed in the context of litigation involving the drug DES. These reasons also militate against lowering the requirement that a plaintiff prove exposure in asbestos cases. First, elimination of a causation requirement would render every manufacturer an insurer not only of its own prod-

ucts, but also of all generically similar products manufactured by its competitors. *Starling,* 533 F.Supp. at 190. Second, expanding culpability of asbestos manufacturers could reduce the ability to spread losses by insurance and otherwise distribute risk. *Id.* Third, application of such a novel theory of causation would raise serious questions of fairness due to the fact that different manufacturers' asbestos products differ in degrees of harmfulness. *Id.* at 191. Thus, even if this Court were not bound as it is by Georgia law to require proof of exposure to a particular defendant's products to establish proximate cause, significant policy reasons favor retention of proximate cause as an essential element of a cause of action in asbestos litigation.

### Rebuttable Presumption of Exposure to Defendant's Products

■ Blackston now makes a strong argument that, because of the alleged nature of asbestos fibers and asbestos dust, a rebuttable presumption of exposure should arise once a plaintiff has shown that defendant's asbestos-containing products were used at a job site at a time that the plaintiff was employed at the job site. This presumption would shift the burden of producing evidence to the defendant, and provide a circumstantial inference sufficient to defeat a motion for summary judgment.

We begin by noting that this is a diversity case and that Georgia law does not provide any indication that such a presumption of exposure exists. Indeed, an examination of the most relevant statutes and cases suggests that such a presumption would be directly contrary to established principles in Georgia law. A close analogy may be found in the statutory presumption related to asbestos-caused injury contained in the worker's compensation laws. Under O.C.G.A. § 34–9–333, where there is no clear preponderance of evidence in favor of the claimant, disability or death from asbestosis will be presumed not to be due to the nature of the occupation unless the claimant has been exposed to asbestos dust

over a certain time defined by statute. The mere assertion that the claimant was employed at a time when his employer was using asbestos-containing products does not invoke the presumption.

Cases decided under Georgia's worker's compensation statute require claimants alleging injury caused by exposure to toxic substances to show more than the fact of employment and the use of a toxic substance to result in a finding of exposure. In *Maczko v. Employers Mutual Liability Insurance Co.*, 116 Ga.App. 247, 157 S.E.2d 44 (1967), the court reversed an award of compensation because the record did not contain sufficient evidence to show that the claimants' decedent had been exposed to boron gas while doing experimental work for his employer. Even though the claimants offered medical testimony warranting an inference that boron gas could have produced the symptoms, lay testimony indicating probable exposure to some sort of fumes, and documentary evidence indicating the employer's use of certain chemicals, the court determined that there was only a possibility of a causal relationship between the employer's use of boron and the employee's death. Unless the claimant could show "the *probability* of exposure as a cause" of the employee's death, *id.* 157 S.E.2d at 47, the award had to be set aside. Other cases also require the plaintiff to prove exposure without benefit of a presumption. *See Willis v. Employers Fire Insurance Co.*, 153 Ga.App. 445, 265 S.E.2d 356 (1980) (denying claim where employee could not show exposure to "plastic dust"); *Ocean Accident and Guarantee Corp. v. Harris*, 87 Ga.App. 399, 74 S.E.2d 12 (1953) (reversing award where claimant could not establish exposure to hazards that would cause silicosis).

Plaintiff contends that the Fifth Circuit has adopted the presumption of exposure he advocates. He argues that in *Jackson v. Johns-Manville Sales Corp.*, 727 F.2d 506 (5th Cir.1984), *vacated in part en banc, and questions certified to state supreme court*, 750 F.2d 1314 (5th Cir.1985), and *Halphen v. Johns-Manville Sales Corp.*, 737 F.2d 462 (5th Cir.1984), *vacated en banc, and questions certified to state supreme court*, 752 F.2d 124 (5th Cir.1985), the court did not require plaintiffs to produce direct proof of place and time of exposure. An examination of the facts in both cases reveals that plaintiff mischaracterizes them. In *Jackson*, the plaintiff, who had worked at a shipyard, testified that he himself installed sheet metal over asbestos insulation produced by the defendant and had to drill and cut the asbestos material in the process. 727 F.2d at 509. In *Halphen*, the plaintiff was employed by an asbestos installation subcontractor which installed defendant's asbestos-containing products. 737 F.2d at 464.

Unlike the plaintiffs in *Jackson* and *Halphen*, plaintiff Blackston did not himself work with defendant's asbestos products and did not have personal knowledge of the products used around him. We need not here decide the position plaintiff would be in if he could prove that the only asbestos used in the plant site came from A C and S products, and his exposure must have come from the plant site. The evidence here that would establish the crucial link between asbestos-containing products installed by A C and S and Blackston, required by the causation element under Georgia law, is missing. The district court provided every opportunity for Blackston to produce such evidence and suggested that plaintiff could meet his burden by finding A C and S insulators who could testify that Blackston was in proximity to them when they were applying asbestos insulation or by identifying A C and S insulators who were close to him when applying asbestos insulation. *See Migues v. Fibreboard Corp.*, 662 F.2d 1182, 1185 (5th Cir. Unit A 1981) (exposure established by three of decedent's co-workers testifying that decedent had worked with defendant's asbestos products while employed as an insulator).

Plaintiff contends that the presumption of exposure adopted in litigation between asbestos manufacturers and their liability insurers should be extended to litigation between asbestos manufacturers and victims of asbestos-related diseases. But the two cases cited by plaintiff both note that the presumption only applies in actions be-

tween manufacturers and their insurers, and that in the underlying tort suit the victim is still forced to show exposure to a particular defendant's asbestos products. *Keene Corp. v. Insurance Company of North America,* 667 F.2d 1034, 1051–52 (D.C.Cir.1981), *cert. denied,* 455 U.S. 1007, 102 S.Ct. 1644, 71 L.Ed.2d 875 (1982); *Insurance Company of North America v. Forty-Eight Insulations, Inc.,* 633 F.2d 1212, 1225 (6th Cir.1980) ("In an underlying asbestosis suit, the plaintiff must show that Forty-Eight's products injured him in order to be able [to] maintain a cause of action against Forty-Eight."), *cert. denied,* 454 U.S. 1109, 102 S.Ct. 686, 70 L.Ed.2d 650 (1981). In fact, the "presumption" adopted in these insurance cases was a necessary corollary of *Borel v. Fibreboard Paper Products Corp.,* 493 F.2d 1076 (5th Cir. 1973), *cert. denied,* 419 U.S. 869, 95 S.Ct. 127, 42 L.Ed.2d 107 (1974). Under *Borel,* if a plaintiff can show exposure to the asbestos products of several manufacturers, each manufacturer is jointly and severally liable to the victim. Thus, plaintiffs need not show the full extent of their exposure to asbestos in a particular product to prevail against a manufacturer. *Keene,* 667 F.2d at 1051. Because insurers' liability is individual and proportionate, rather than joint and several like the manufacturers, some procedural tool was necessary for allocating coverage between the several insurers who may have insured a particular asbestos manufacturer at different times during a forty-year period. The *Keene* and *Forty-Eight* courts therefore adopted a presumption that exposure had occurred during the entire coverage period and allocated to insurers the burden of proving that no exposure to asbestos manufactured by its insured took place during certain years. If insurers could shoulder that burden, they would not be held liable for those years. Thus, under *Borel* asbestos victims already have the "presumption" that made necessary the "presumption" created in *Keene* and *Forty-Eight* because once they show some exposure to a particular defendant's products, they are not required to show the full extent of exposure. No case cited by plaintiff supports the novel propo-

sition that a plaintiff need not show any exposure whatsoever to those products. In fact, the presumption created in *Keene* and *Forty-Eight* indirectly aids asbestos victims because it spreads losses, thereby increasing the limited pool of resources available to injured plaintiffs. Nevertheless, under *Borel, Jackson, Halphen, Keene,* and *Forty-Eight,* as well as under Georgia law, the asbestos victim still must prove exposure to a particular defendant's product at some time and place.

We are aware that plaintiffs who did not work directly with asbestos, but instead were exposed to it because it was used in proximity to their workplace, face formidable proof problems in their attempts to show causation. *See Special Project, An Analysis of the Legal, Social and Political Issues Raised by Asbestos Litigation,* 36 Vand.L.Rev. 573, 609–10 (1983). These proof problems, however, cannot alone justify the creation of the presumption plaintiffs advocate. We note that in other asbestos litigation the *en banc* Fifth Circuit has recently rejected a plaintiff's invitation to create federal common law in the asbestos context regarding the nature of the actionable injury and the availability of punitive damages. *Jackson v. Johns-Manville Sales Corp.,* 750 F.2d 1314 (5th Cir. 1985) *(en banc ).* The court distinguished asbestos litigation from the narrow contexts in which federal courts have developed federal common law. *Id.* at 1323–26. The court also pointed out some of the impracticalities complicating any attempt to develop federal common law in asbestos litigation: the geographical limits on a court of appeals' decision preventing development of a truly uniform federal common law in asbestos cases; the lack of a limiting principle once a federal court begins developing federal tort law; and the additional delay in resolving asbestos cases that would accompany the displacement of state tort law. *Id.* at 1326–27. While acknowledging the enormity and uniqueness of asbestos litigation, *id.* at 1323, the *Jackson* court concluded the case was "not an appropriate one for the creation of a federal common law because of the absence of a

uniquely federal interest and the practical problem that would attend the displacement of state law." *Id.* at 1327. In our judgment, many of these same policies militate against adopting as a matter of federal law the rebuttable presumption of exposure urged by plaintiffs here.

The requirement that plaintiffs like Blackston identify the asbestos-containing product of a particular defendant and show that they worked in proximity to workers using that product sets a standard that is difficult to meet, in view of the length of time between exposure and perceived injury and the migratory nature of much of the employment involving asbestos exposure. Asbestosis is a progressive and cumulative disease caused by asbestos fibers which are inhaled into the lungs. The disease does not manifest itself for ten to twenty-five years after initial exposure. During this latency period, lung tissue reacts in a progressively adverse manner which is irreversible. Each additional inhalation of asbestos fibers can result in additional tissue damages. *See Borel v. Fibreboard Paper Products Corp.*, 493 F.2d at 1083; *Insurance Co. of North America v. Forty-Eight Insulations, Inc.*, 633 F.2d at 1214, 1218–19. But the problem is one better suited for solution by state legislatures, state courts, and Congress rather than through the creation of some federal "presumption" by federal courts sitting in diversity cases only.

AFFIRMED.

R. LANIER ANDERSON, III, Circuit Judge, concurring in part and dissenting in part:

I agree with the majority that Blackston has not adduced sufficient evidence to survive summary judgment under the ordinary principles of the Georgia law of proximate cause. Moreover, I do not read Blackston's appellate brief to assert a market share or industry-wide theory of liability. *See Starling v. Seaboard Coastline R. Co.*, 533 F.Supp. 183 (S.D.Ga.1982). However, as the majority acknowledges, he does argue "that, because of the alleged nature of asbestos fibers and asbestos dust, a rebuttable presumption of exposure should arise

once a plaintiff has shown that defendant's asbestos-containing products were used at a job site at a time the plaintiff was employed at the job site." Ante at 1483. I agree with the majority that it would not be appropriate for a federal court, sitting in a diversity case, to create such a presumption out of whole cloth, especially when there is no indication that the Georgia courts would do so. However, I dissent because I also would not reject such a presumption out of hand. We have available to us procedures for certifying such questions to the Supreme Court of Georgia. I would certify that question in this case.