786 F.2d 1225
 54 USLW 2514, Prod.Liab.Rep.(CCH)P 10,946
 Grace A. ROEHLING, as Executrix of the Estate of Arthur J.
Roehling, Appellant,
v.
NATIONAL GYPSUM COMPANY GOLD BOND BUILDING PRODUCTS;
Owens-Illinois, Inc. and The Celotex Company,
Successor-In-Interest to Philip Carey
Corporation, Appellees,
and
Owens-Corning Fiberglas Corp., Successor by Purchase of
Kaylo Division of Owens-Illinois Glass Co.; Pittsburgh
Corning Corp.; H.K. Porter Co., Inc.; Southern Textile
Co.; Eagle-Picher Industries, Inc.; Raymark Industries,
Inc.; Porter-Hayden Co.; Philip Carey Corp.; Armstrong
Cork Co.; Fibreboard Paper Products Corp.; Combustion
Engineering, Inc.; Keene Insulation Co.; Nicolet, Inc. and
Garlock, Inc., Defendants.
 No. 85-1571.
 United States Court of Appeals,
Fourth Circuit.
 Argued Dec. 6, 1985.
Decided March 28, 1986.
 
 Thomas J. Pearson (Harold L. Sosebee, Jr., Thomas J. Pearson & Associates and Gerald F. Ragland, Jr., Houston, Tex., on brief), for appellant.
 Robert L. O'Donnell (Vandeventer, Black, Meredith & Martin, Becky A. Powhatan, Bruce T. Bishop, Willcox & Savage, P.C., Jerrold G. Weinberg, Weinberg, Stein & Crenshaw, and R. Barrow Blackwell, Kaufman & Canoles, Norfolk, Va., on brief), for appellees.
 Before ERVIN and SNEEDEN,* Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.
 ERVIN, Circuit Judge:
 
 
 1
 Arthur J. Roehling sued eighteen defendants, alleging personal injuries due to exposure to their asbestos products. Shortly after the filing suit, Roehling died and his wife, Grace A. Roehling, was substituted as plaintiff. The district court granted summary judgment in favor of four defendants; National Gypsum Company; Owens-Illinois, Inc.; GAF Corporation; and The Celotex Corporation. The other fourteen defendants had been previously dismissed from the suit.
 
 
 2
 On appeal, plaintiff contends that the court erred in granting summary judgment, as there are genuine issues of material fact as to Roehling's exposure to the remaining defendants' asbestos products.[1] Because we find some merit in plaintiff's assertion, we reverse in part and affirm in part.
 
 I.
 
 3
 Arthur J. Roehling worked as a pipefitter in the Buffalo, New York area at three separate job sites from July, 1948 through March, 1951, as follows: (1) Huntley Power Station--July 1948 to December 1948; (2) DuPont Cellophane Plant--December 1948 to April 1949; and (3) Ford Stamping Plant--July 1950 through March 1951. Plaintiff claims that Roehling was exposed to defendants' asbestos products during this employment, and therefrom developed mesothelioma.[2]
 
 
 4
 The evidence in the record upon which the district court relied in its order consists of Roehling's deposition, taken prior to his death, and the depositions of three witnesses who had worked during the period in question at one or more of the three job sites. The court held that this evidence was insufficient to raise any genuine issues of material fact because: (1) Roehling could not identify the asbestos products to which he was exposed at the three job sites; and (2) the three witnesses' testimony could not cure this deficiency since none of the three ever knew Roehling, or remembered having contact with Roehling, or could identify Roehling as being present on any of the jobs, or knew when, where or what product Roehling had been exposed to, if any. In other words, the court found that, based upon the evidence, there was no more than mere speculation that Roehling was exposed to defendants' products.
 
 
 5
 We agree with the district court that as to the DuPont Cellophane Plant and Ford Stamping Plant job sites, the evidence fails to establish issues of material fact.[3] We do not agree, however, that no genuine questions of fact exist regarding the Huntley Power Station.
 
 II.
 
 6
 The testimony of Roehling and the three witnesses regarding the Huntley Power Station present the following evidence. Roehling worked on the construction of two new boilers as a pipefitter for the M.W. Kellog Company at the Huntley Power Station. His duties involved pipe installation and subsequent testing of the boiler piping system. At the same time as pipe installation and testing were taking place, asbestos insulators would follow behind the pipefitters installing asbestos pipe covering. Simultaneously, asbestos insulation was being applied to the boiler walls. Roehling stated that asbestos material was "all over the place." (Appendix I, pp. 7-8).
 
 
 7
 At the time Roehling was employed at the Huntley Power Station, only two companies were doing the asbestos insulation work: Taylor Insulation and Niagara Asbestos. Joseph Walters, an employee of Taylor Insulation, worked at the Huntley Power Station job site on one of the two new boilers during the same time period as Roehling. (Appendix II, pp. 27, 29, 31). He testified that pipefitters and insulators worked in the same areas at the same time, adjacent to one another. (Appendix II, pp. 64-66).
 
 
 8
 While employed there, Walters, an insulator, insulated boiler walls with asbestos block and then covered the block with asbestos cement. (Appendix II, p. 30). Therefore, Walters had direct contact with asbestos-containing products. He identified his employer as a distributor for National Gypsum products. (Appendix II, p. 35). He testified that ninety percent (90%) of the products he used at Huntley Power Station were from National Gypsum (Appendix II, p. 59), consisting of Gold Bond cement, blankets and block asbestos. Walters stated that Kaylo block (an Owens-Illinois, Inc. product) also was used. (Appendix II, p. 36).
 
 
 9
 John W. Kelleher also worked at the Huntley Power Station on one of the two new boilers during the same time period as Roehling. (Appendix II, pp. 70, 72). He was employed by Taylor Insulation as an insulator-helper. Although Kelleher's job classification was that of helper, he was involved in product application on the boiler walls and thus had personal knowledge of the product type being applied. (Appendix II, p. 71). He testified that "tons of" Gold Bond cement and Gold Bond asbestos blanket, provided by National Gypsum, were used at the job site. (Appendix II, pp. 74, 84-85).
 
 
 10
 Harry J. Hassey also worked at Huntley Power Station during the same time period as Roehling. (Appendix II, p. 91). He stated that two new boilers were being constructed. (Appendix II, p. 94). He was employed by the second insulation company on the Huntley Power Station job site, Niagara Asbestos, (Appendix II, p. 95), as an insulation helper on one of the new boilers. (Appendix II, p. 116). Hassey's duties involved preparing asbestos block and pipe covering insulation; removing it from containers, sawing it and delivering it to the insulators. (Appendix II, pp. 93, 96-97). He also mixed asbestos cement and delivered it to the insulators. (Appendix II, 93, 96-97). Additionally, Hassey was involved in application of asbestos products about ten percent (10%) of the time. (Appendix II, p. 107). Hassey, due to his broad range of duties on the new boiler, was able to testify that Kaylo block by Owens-Illinois, Inc. and Gold Bond cement by National Gypsum were used. (Appendix II, pp. 97-98).
 
 
 11
 Defendants have not presented any evidence disputing the above testimony of the witnesses and Roehling. Defendants merely assert, and the district court held, that the evidence is not enough to place Roehling in close proximity to identifiable asbestos products.
 
 III.
 
 12
 Viewing the evidence in the light most favorable to plaintiff,[4] we must conclude that defendants and the district court are wrong. The facts and underlying inferences establish that Roehling worked in the same limited area of the plant, at the same time, as the witnesses, on the construction of the new boiler(s) as pipefitter and insulators/helpers working side by side. Although Roehling could not himself remember what asbestos products were used in this work area, the witnesses, who handled the materials, have distinct memories: Owens-Illinois and National Gypsum.[5] Such evidence clearly raises a question of fact as to whether Roehling was exposed to defendants' products.
 
 
 13
 We disagree with the district court that direct evidence is needed showing that Roehling identified the asbestos products or that the witnesses knew, had contact with, or recognized Roehling as being on the job site. Such burden is unreasonable. Roehling should not be required to remember product names some thirty years later when he had been a pipefitter, breathing the dust, not handling the products. Such requirement would, in essence, destroy an injured bystander's cause of action for asbestos exposure. Rarely would bystanders take note of names of materials used by others. Moreover, the witnesses should not be required to know Roehling. They were employees of different companies, with different responsibilities in the work area. Bystanders often go unrecognized, but still receive injuries.
 
 
 14
 The evidence, circumstantial as it may be, need only establish that Roehling was in the same vicinity as witnesses who can identify the products causing the asbestos dust that all people in that area, not just the product handlers, inhaled. This case includes such evidence and a jury can reasonably infer therefrom that plaintiff was injured by defendants' products.
 
 
 15
 The district court and defendants cite Blackston v. Shook & Fletcher Insulation Co., 764 F.2d 1480 (11th Cir.1985), as the principal authority for finding Roehling's evidence inadequate to prove his exposure to defendants' products.[6] We disagree. The evidence in Blackston was not as compelling as the testimony herein. The Blackston plaintiff was unable to present any evidence showing that he worked in the same area as the witnesses who could identify the asbestos products. The evidence showed that he simply worked in the same plant. The instant facts establish that Roehling and the witnesses were not only in the same plant, but also in the same area, at the construction site of the new boilers, and thus breathed the same air, which was filled with defendants' products' dust.
 
 
 16
 In sum, we find the evidence herein sufficient to rise above mere speculation and mere possibility that Roehling was exposed to defendants' asbestos products at the Huntley Power Station. The district court erroneously required direct testimony of exposure and failed to draw the reasonable inferences from plaintiff's circumstantial evidence. Such inferences establish that Roehling was in the same limited area as those witnesses who can identify defendants' products as causing the asbestos dust in that area. We therefore reverse the district court and remand the case for trial as it relates to Roehling's injury at the Huntley Power Station caused by the asbestos products of National Gypsum Company and Owens-Illinois, Inc.
 
 
 17
 AFFIRMED IN PART AND REVERSED AND REMANDED IN PART.
 
 
 
 *
 The Honorable Emory M. Sneeden resigned from the court before this case was decided. He did not participate in the decision
 
 
 [1]
 Only three defendants remain on appeal: National Gypsum Company; Owens-Illinois, Inc.; and The Celotex Corporation. Defendant GAF Corporation was dismissed from suit subsequent to oral argument
 
 
 [2]
 Mesothelioma is a disease predominantly associated with exposure to asbestos fibers. The Merck Manual 673 (14th ed. 1982); 4A R. Gray & L. Gordy Attorney's Textbook of Medicine, Sec. 205C.72 (1985)
 
 
 [3]
 The evidence creates only a possibility that Roehling was exposed to defendants' asbestos at these locations. Roehling was unable to identify the products at the DuPont Plant and none of the three witnesses worked there at the same time as Roehling. In addition, Roehling was unable to remember in what area of the Ford Stamping Plant he worked and if asbestos was around him. The witnesses, likewise, were unable to specify where they had worked in the Ford plant. Such evidence clearly fails to place Roehling in close proximity to identifiable asbestos products at these two job sites
 
 
 [4]
 In determining if defendants' motion for summary judgment should be granted
 [t]he facts themselves, and the inferences to be drawn from the underlying facts, must be viewed in the light most favorable to plaintiff, as the party opposing the motion.... The nonmoving party is in a favorable posture, being entitled "to have the credibility of his evidence as forecast assumed, his version of all that is in dispute accepted, all internal conflicts in it resolved favorably to him, the most favorable of possible alternative inferences from it drawn in his behalf; and finally, to be given the benefit of all favorable legal theories invoked by the evidence as considered."
 Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir.1985) (emphasis added) (quoting Charbonnages de France v. Smith, 597 F.2d 406, 414 (1979)).
 
 
 [5]
 We affirm the district court's motion for summary judgment in favor of The Celotex Company. The evidence does not establish that its product was present in Roehling's work area
 
 
 [6]
 The facts in Blackston are somewhat similar to the instant case. Plaintiff Blackston, a pipefitter, alleged exposure to defendant's asbestos products. Although he was unable to remember the manufacturer of the products, he presented two witnesses (insulators), who also worked at the plant in question, to establish the defendant's liability. Neither plaintiff's nor the witnesses' testimony specified in what area of the plant they had worked. The court, therefore, found the evidence insufficient to infer that plaintiff worked in close proximity to the witnesses who could identify the products. Plaintiff could have worked in a different area and thus inhaled dust created by another company's asbestos products. Blackston, 764 F.2d at 1481-82