969 F.2d 1424
 23 Fed.R.Serv.3d 275, Prod.Liab.Rep. (CCH) P 13,243
 Mary KREPPEIN, individually and as administratrix of the
estate of Gustave Urban Kreppein, Plaintiff-Appellee,
v.
The CELOTEX CORPORATION, individually and as
successor-in-interest to Philip Carey Manufacturing Co.;
Philip Carey Corporation; Briggs Manufacturing Co.; Smith
& Kanzler Corporation and Panacon Corporation; National
Gypsum Company; Armstrong World Industries, Inc., formerly
known as Armstrong Cork Company; Eagle-Picher Industries,
Inc.; Nicolet, Inc., individually and as
successor-in-interest to Keasbey-Mattison Company; H.K.
Porter Company, Inc., individually and as successor to
Southern Textile Corporation and Southern Asbestos Company;
Fibreboard Corporation; Owens-Illinois, Inc.;
Pittsburgh-Corning Corporation, individually and as
successor-in-interest to Unarco Industries; United States
Gypsum Company; Raymark Industries, Inc. and United States
Mineral Products Company, Defendants,
The Celotex Corporation, individually and as
successor-in-interest to Philip Carey
Manufacturing Co., Defendant-Appellant.
 No. 585, Docket 90-7576.
 United States Court of Appeals,
Second Circuit.
 Argued April 20, 1992.
Decided July 21, 1992.
 
 Andrew T. Berry, Newark, N.J. (McCarter & English, of counsel), for defendant-appellant.
 Steven J. Phillips, New York City (Alani Golanski, Moshe Maimon, Levy Phillips & Konigsberg, of counsel), for plaintiff-appellee.
 Before: OAKES and WALKER, Circuit Judges, and LEVAL, District Judge.*
 OAKES, Circuit Judge:
 
 
 1
 In this products liability case, the Celotex Corporation appeals from a judgment of the United States District Court for the Eastern District of New York, Eugene H. Nickerson, Judge, holding Celotex partially liable for Gustave Kreppein's asbestos-related injury and death. 738 F.Supp. 66 (1990). Celotex argues that plaintiff Mary Kreppein, Mr. Kreppein's widow, failed adequately to prove product nexus. It also argues that the apportionment of liability was against the weight of the evidence, and that the district court erroneously allowed Kreppein to amend her complaint. Finding none of Celotex's arguments persuasive, we affirm.
 
 FACTS
 
 2
 Gustave Kreppein worked cleaning ship engine rooms and boiler rooms at the Todd Shipyard in Brooklyn, New York, from 1940 to 1942, sweeping among other things asbestos debris left by pipecoverers. From 1950 to 1981, he worked as an ironworker at various building sites, including the Tishman Building, the Socony Vacuum Building and the 14th Street Powerhouse, where he suffered further asbestos exposure. In 1981, Mr. Kreppein was diagnosed with asbestosis and mesothelioma. He died approximately three and a half years later at age 64.
 
 
 3
 Mary Kreppein, individually and as administratrix of the estate, sued a number of manufacturers of asbestos-containing products, including Owens-Illinois, Inc. (Owens-Illinois), United States Mineral Products Company (U.S. Mineral), Eagle-Picher Industries, Inc. (Eagle-Picher), and the Celotex Corporation (Celotex). Celotex is the successor in interest to Philip Carey Manufacturing Company (Philip Carey), an asbestos product manufacturer.
 
 
 4
 The jury found that Mr. Kreppein's injury and death were caused by exposure to the defendants' products. It awarded actual damages of $731,557.79, holding appellant Celotex liable for 32.5% of the total. It allocated 5% of liability to Owens-Illinois, 15% to U.S. Mineral, and 27.5% to Eagle-Picher.
 
 DISCUSSION
 I. Product Nexus
 
 5
 Celotex argues that plaintiff's proof of causation was insufficient as a matter of law. Pointing to the requirement of "product nexus," Celotex contends that Kreppein failed to prove specifically that Celotex or Philip Carey products, as distinct from other asbestos-containing products, injured her husband.
 
 
 6
 In so arguing, Celotex urges us to adopt a strict requirement for proof of causation in asbestos cases. We have rejected defendant's argument at least three times before, first in Johnson v. Celotex Corp., 899 F.2d 1281 (2d Cir.), cert. denied, --- U.S. ----, 111 S.Ct. 297, 112 L.Ed.2d 250 (1990), next in O'Brien v. National Gypsum Co., 944 F.2d 69 (2d Cir.1991), and most recently in In re Joint Eastern & Southern District Asbestos Litig.; In re Brooklyn Navy Yard Asbestos Litig. (Brooklyn Navy Yard), 971 F.2d 831 (2d Cir.1992). Each time, we found proof of causation sufficient notwithstanding the lack of identification of the precise product that injured a given plaintiff. Brooklyn Navy Yard, at 836-37; O'Brien, 944 F.2d at 72-73; Johnson, 899 F.2d at 1285-87. See also Roehling v. National Gypsum Co. Gold Bond Bldg. Prods., 786 F.2d 1225, 1228 (4th Cir.1986) ("We disagree with the district court that direct evidence is needed showing that [plaintiff] identified the asbestos products or that the witnesses knew, had contact with, or recognized [plaintiff] as being on the job site. Such burden is unreasonable."); Lyons v. DeVore, 39 N.Y.2d 971, 972, 354 N.E.2d 848, 848, 387 N.Y.S.2d 108, 108 (1976) (mem.) (" 'precision' of proof cannot always be expected or required" in death cases).
 
 
 7
 In considering Celotex's assertion that the evidence was insufficient to support plaintiff's claim, "[w]e are 'bound to view the evidence in the light most favorable to [the plaintiff] and to give [her] the benefit of all inferences which the evidence fairly supports, even though contrary inferences might reasonably be drawn.' " Michelman v. Clark-Schwebel Fiber Glass Corp., 534 F.2d 1036, 1042 (2d Cir.) (quoting Continental Ore Co. v. Union Carbide & Carbon Corp., 370 U.S. 690, 696, 82 S.Ct. 1404, 1409, 8 L.Ed.2d 777 (1962), cert. denied, 429 U.S. 885, 97 S.Ct. 236, 50 L.Ed.2d 166 (1976) ). Viewed in that light, the testimony at trial amply supported the jury's finding that Mr. Kreppein was injured in part by exposure to Philip Carey asbestos products.
 
 
 8
 First, the testimony at trial supports a finding that Mr. Kreppein was exposed to asbestos dust from Philip Carey products at the Todd Shipyard. One asbestos worker, who worked in the shipyard at the same time as Mr. Kreppein, testified that he used Philip Carey asbestos products there, that dust from those products "would fly all around," and that the air remained dusty from the asbestos products while the laborers--such as Gustave Kreppein--cleaned up the mess. Two other Todd Shipyard pipeworkers from the same period corroborated that testimony.
 
 
 9
 Second, the record supports a finding that ornamental ironworkers such as Mr. Kreppein at the Tishman and Socony Vacuum Buildings were exposed to dust from the pipecovering and block used by the pipecoverers working in their vicinity, and that those products were manufactured by Philip Carey. Third, ample evidence was adduced to establish that Mr. Kreppein breathed asbestos fibers from Philip Carey products at the 14th Street Powerhouse. Mr. Kreppein ripped out boilers at the powerhouse in 1967 and in the early 1970's. The job created much dust from the insulation on the boilers and pipes. Uncontroverted evidence established that Philip Carey asbestos products insulated the steam piping at the powerhouse. In sum, we find Kreppein's proof sufficient to support the jury's finding that her husband's asbestosis and mesothelioma were caused in part by exposure to Philip Carey asbestos products.
 
 II. Apportionment of Liability
 
 10
 Celotex argues that even if the evidence sufficed to support some liability on Celotex's part, it did not suffice to support liability for 32.5% of the verdict. Central to Celotex's argument is its assumption that allocation of liability cannot take into account the relative blameworthiness of the parties. We find this assumption to be without merit. While an important part of the jury's task is to consider the degree to which each party's conduct contributed to causing the plaintiff's injury, see, e.g., Arbegast v. Board of Educ., 65 N.Y.2d 161, 168, 480 N.E.2d 365, 370, 490 N.Y.S.2d 751, 756 (1985) (referring to the process as "comparative causation"), the statute states clearly that the "equitable shares" a jury apportions "shall be determined in accordance with the relative culpability of each person liable for contribution." N.Y.C.P.L.R. § 1402 (McKinney 1976). This suggests that liability should be apportioned according to relative degrees of fault for the injury, which may include not only the strength of the causal link but also the magnitude of the fault. See Garrett v. Holiday Inns, Inc., 58 N.Y.2d 253, 258, 447 N.E.2d 717, 719, 460 N.Y.S.2d 774, 777 (1983) ("Principles allowing apportionment among tort-feasors reflect the important policy that responsibility for damages to an injured person should be borne by those parties responsible for the injury, in proportion to their respective degrees of fault.") Given the substantial evidence of Mr. Kreppein's exposure to Philip Carey asbestos products, and the ample evidence of Celotex's blameworthiness, we see no reason to disturb the jury's allocation of 32.5% responsibility to Celotex. See Dufur v. Lavin, 101 A.D.2d 319, 327, 476 N.Y.S.2d 389, 395 (1984) (Percentage allocation of liability is generally a matter for the jury.), aff'd, 65 N.Y.2d 830, 482 N.E.2d 919, 493 N.Y.S.2d 123 (1985).
 
 
 11
 We find meritless Celotex's argument that it cannot be held liable, as a matter of law, because given the state of the art, Celotex could not have known that bystander exposure could result in adverse health effects. The record amply supports a finding that Celotex knew the dangers of asbestos to workers like Gustave Kreppein. We note that in Johnson, 899 F.2d at 1288, we held that the evidence of Celotex's knowledge of the hazards of asbestos supported not only a finding of liability, but also punitive damages.
 
 III. Amended Pleading
 
 12
 Kreppein's complaint, as originally filed, asserted a claim for wrongful death damages. When defense counsel moved to preclude any testimony relating to pain and suffering, on the ground that wrongful death damages are limited to pecuniary losses, the district court allowed Kreppein to amend the complaint to assert a claim for survival action damages.[1]
 
 
 13
 Federal Rule of Civil Procedure 15(a) provides that leave to amend a pleading "shall be freely given when justice so requires." Rule 15 further provides:
 
 
 14
 If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice the party in maintaining the party's action or defense upon the merits.
 
 
 15
 Fed.R.Civ.P. 15(b). The defendants were on notice of the underlying facts relied upon by plaintiff, and had full discovery of Mr. Kreppein before his death; they were not prejudiced by the addition of a claim for damages for pain and suffering. Judge Nickerson was well within his discretion in allowing the amendment. See Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).
 
 
 16
 Accordingly, the judgment of the district court is affirmed. Plaintiff's request for sanctions is denied.
 
 
 
 *
 The Honorable Pierre N. Leval, United States District Judge for the Southern District of New York, sitting by designation
 
 
 [1]
 There is some dispute as to whether the district court allowed plaintiff to amend her complaint or simply construed her complaint to assert a cause of action for personal injury. The district court, in its memorandum and order dated May 21, 1990, stated that it "finds no merit in Celotex's objections to the court's reading the complaint as stating a claim for personal injury." Nevertheless, we view the district court's action as allowing an amendment. In response to the defense's motion to preclude testimony relating to pain and suffering, plaintiff's counsel stated to the district court, "I'll make a motion right now to amend the complaint to add the theory of damages of pain and suffering of the plaintiff." After hearing the defendants' objections, the court responded from the bench, "I'll allow you to amend the complaint," explaining to the defendants, "I don't see how you are prejudiced in any degree."