WILSON,
concurring in part and dissenting in part:
I concur in the Majority’s decision not to insert the “ ‘bare metal defense” into Georgia’s case law on behalf of the State of Georgia. According to the complaint, William H. Thurmon, Sr. “was diagnosed with, and later died from, complications associated with malignant pleural mesothelioma,” which “is a rapidly debilitating and fatal form of cancer affecting the lining of an individual’s lungs, the only known cause of which in North America is asbestos exposure.” The bare metal defense would “automatically insulate from liability an entire category” of manufacturers of asbestos-containing products in such cases. See Maj. *762 Op. at 756. There are a number of “impracticalities complicating any attempt [by a federal court] to develop federal common law in asbestos litigation.” Blackston v. Shook & Fletcher Insulation Co., 764 F.2d 1480, 1485-86 (11th Cir. 1985). Unless future Georgia courts explicitly or clearly adopt the bare metal defense — which is essentially a policy statement about the quantity and type of defendants Georgia wishes to hold liable — this federal court should not do so for Georgia.
Although I also agree with the Majority that “Thurmon was exposed to asbestos-containing dust from [third-party asbestos-containing] gaskets being replaced and used in connection with Crane Co. valves,” Maj. Op. at 757-58 (emphasis added), we disagree regarding whether Crane Co. may be held liable for that exposure. The Majority frames the issue on appeal as whether Thurmon was exposed to a defectively designed Crane Co. valve that required asbestos-containing gaskets to function properly and that proximately caused Thurmon’s injuries. See Maj. Op. at 758-61. However, the relevant question on appeal is simply whether Thurmon was exposed to an asbestos-containing product for which Crane Co. was responsible. See Blackston, 764 F.2d at 1481.
In order to survive summary judgment under either a negligent design or failure to warn theory of liability, the plaintiffs must show that Thurmon was exposed to a product manufactured by Crane Co., see id. at 1481-82, which they may do by showing that Crane Co. designed a product system in which it specified asbestos-containing component parts. A corporate entity is legally responsible for a product in which it “ha[s] an active role in the ... design ... of [the] product[ ].” See Buchan v. Lawrence Metal Prods. Inc., 270 Ga. App. 517, 607 S.E.2d 153, 156 (2004); Davenport v. Cummins Ala., Inc., 284 Ga.App. 666,644 S.E.2d 503, 508 (2007) (describing a manufacturer as one who “actively participate^] in the conception, design, or specification of the [product]”).[1] Therefore, the plaintiffs may satisfy their burden by showing that Thurmon was exposed to an asbestos-containing product designed by Crane Co.
Additionally, the plaintiffs must show that Thurmon was exposed to Crane Co.’s product, as originally designed. Georgia courts look to a product’s “design specifications” to determine a product’s “original design.” See Banks v. ICI Ams., Inc., 264 Ga. 732, 450 S.E.2d 671, 673-75 & n. 3 (1994); cf. Fletcher, 773 S.E.2d at 863-64.
The record supports the conclusion that Crane Co. designed a valve-gasket system in which it specified asbestos gaskets that would have to be routinely replaced. In the March 9, 1981 internal Crane Co. memorandum, Crane Co.’s representative clearly stated: “Until we locate acceptable alternates, or until there is a prohibition on the use of asbestos gaskets and packings (either by OSHA/EPA or customer preferences), we are forced to continue specifying the proven asbestos material in our products.” (emphasis added). The representative also stated: “If there are corporate prohibitions on asbestos gaskets and *763 packing in Crane plants, then all the valve plants are in trouble.”[2] Viewing these statements in the light most favorable to the plaintiffs, the memorandum establishes, for purposes of surviving summary-judgment, that as late as March of 1981 Crane Co. generically specified that asbestos gaskets be used in all its industrial valves that utilized gaskets.[3] Consequently, these memorandum statements make clear that, by original design, Crane Co.’s valve-gasket system was an “asbestos-containing product[].” See Blaekston, 764 F.2d at 1481. Additionally, it is undisputed that the relevant “Crane Co. valves ... required routine maintenance involving the removal and replacement of gaskets and packing material.” Maj. Op. at 754. Thus, a jury could find that Crane Co.’s product, as originally designed, was an asbestos-containing valve-gasket system in which the gaskets would require routine replacement. That third-party vendors supplied some of the asbestos gaskets does not remove Crane Co.’s potential liability because Thurmon was still exposed to Crane Co.’s valve-gasket system, as originally designed.[4]
Accordingly, there remains a triable issue of fact in this case as to whether Thurmon’s exposure to Crane Co.’s asbestos-containing product resulted in Thur-mon’s injuries. A manufacturer may be liable under Georgia law in a negligent design claim for “intended or foreseeable uses” of its product. Chrysler Corp. v. Batten, 264 Ga. 723, 450 S.E.2d 208, 211 (1994). A manufacturer also may be liable for failure to warn when “the normal use of its product” could result in some “non-obvious foreseeable danger[].” Thornton v. E.I. Du Pont De Nemours & Co., 22 F.3d 284, 289 (11th Cir. 1994). Here, the Crane Co. valve-gasket system allegedly caused Thurmon’s injuries when asbestos dust was released during routine maintenance, which was part of the system’s normal, intended, and forseeable use. Therefore, it remains for the jury to determine whether Crane Co. is liable for Thurmon’s injuries.
In sum, I would hold that (1) Georgia does not recognize the bare metal defense; (2) the product for which Crane Co. is legally responsible is the asbestos-containing valve-gasket system it designed; and *764 (3) there exists a material issue of fact as to whether Thurmon’s injuries arose from his exposure to Crane Co.’s product under either a negligent design or failure to warn theory of liability. Accordingly, I would reverse the district court’s entry of summary judgment for Crane Co. and remand for a jury to determine whether Crane Co.’s product was the proximate cause of Thurmon’s injuries.

. No Eleventh Circuit or Georgia precedents squarely address a defendant’s liability in Georgia for asbestos-related injuries arising in connection with a product it manufactured and into which a third-party component part was inserted post-sale. Therefore, we must look to Georgia products liability principles from outside the asbestos context. See, e.g., Fletcher v. Water Applications Distribution Grp., 333 Ga.App. 693, 773 S.E.2d 859, 863-65 (2015) (citing general products liability concepts from outside the asbestos context within the asbestos context), cert, granted, Cer-tainTeed Corp. v. Fletcher, No. S15G1903 (Ga. Jan. 11, 2016).

. Both statements fall within the last four paragraphs of the memorandum, which, contrary to the Majority's reading, discuss asbestos gaskets and packing, generally. The first paragraph is the only one to refer to iron or steel valves and merely discusses “data circulated ... for grafoil stem packing,” as opposed to specifications for gaskets.

. This evidence should be weighed against other evidence in the record by a jury, not by this court on summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986); see also Ont. Sewing Mach. Co. v. Smith, 275 Ga. 683, 572 S.E.2d 533, 536 (2002) (“[I]t is axiomatic that questions regarding proximate cause are undeniably a jury question and may only be determined by the courts in plain and undisputed cases.” (internal quotation marks omitted)).

.More specifically, Rayonier's use of asbestos gaskets was not an alteration, elimination, or replacement of Crane Co.’s original design— or a redesign of the asbestos gaskets within that original design — because Crane Co. specified, generically, that asbestos gaskets be used in its valve-gasket system. See Carmical v. Bell Helicopter Textron, Inc., 117 F.3d 490, 494 (11th Cir. 1997) (manufacturer may be liable for negligent design so long as “the productos] design has [not] been independently altered, eliminated or replaced by a third party after the sale of the product”); cf. Talley v. City Tank Corp., 158 Ga.App. 130, 279 S.E.2d 264, 269-71 (1981) (manufacturer may be liable for negligent design where the "product’s original design has been merely slightly or somewhat modified” or for failure to warn where "an integral component of a product” has not been “totally redesigned and replaced”).