**Ouida W. LEE, Individually and as Executrix of the Estate of Jack H. Lee, deceased, Plaintiff-Appellant,**

v.

**The CELOTEX CORPORATION, et al., Defendants,**

**National Gypsum Company, Defendant-Appellee.**

No. 84–8273.

United States Court of Appeals, Eleventh Circuit.

July 12, 1985.

Eugene C. Brooks, IV, Savannah, Ga., for plaintiff-appellant.

James G. Peek, William D. Barwick, Atlanta, Ga., for defendant-appellee.

Before RONEY and ANDERSON, Circuit Judges, and MORGAN, Senior Circuit Judge.

RONEY, Circuit Judge:

Jack H. Lee, 59, died of mesothelioma of the lung, a cancer caused by asbestos. He had been exposed to asbestos fibers over a five-year work span. This suit alleged that part of that exposure was to asbestos dust emitted from products manufactured by defendant National Gypsum Company. The district court entered summary judgment for defendant on the ground that plaintiff had failed to show Lee's exposure to any asbestos-containing product manufactured by National Gypsum. Sustaining the district court's decision that to state a claim in such a case a plaintiff must show direct exposure to defendant's asbestos-containing product, we affirm.

Lee filed this action against eleven defendants, including National Gypsum, alleging that he had been exposed to defendants' asbestos-containing products while working as a boilertender from April 1941 to December 1945 in three different locations: Union Camp Paper Mill in Savannah, Georgia; the U.S. Naval Base on Cockspur Island near Savannah; and on board the USS Walton. After litigation commenced, Lee died of asbestos-related causes and his widow and executrix, Ouida W. Lee, was named as plaintiff.

At the trial level, this lawsuit was one of a group of eleven lawsuits alleging personal injury caused by the inhalation of asbestos dust. This group was denominated Group II and all eleven lawsuits were set for trial *ad seriatim* by the trial court. This technique of grouping lawsuits is prevalent in the asbestos litigation due to the volume. By systematically moving a group of similar lawsuits through court, the court conserves its resources, facilitates settlements, and allows parties their day in court if settlement is unreachable.

On appeal, this case was consolidated for oral argument with two other appeals brought from summary judgments. *Odum v. Celotex Corp.*, 764 F.2d 1486 (11th Cir.1985); *Blackston v. Shook & Fletcher Insulation Co.*, 764 F.2d 1480 (11th Cir. 1985). The law applicable to each appeal is similar and the principles of law applied here are set forth in *Blackston*.

■ Brought on theories of negligence (failure to warn), breach of implied warranty, fraudulent concealment, conspiracy, and strict liability, toxic tort litigation such as this has many elements which must be proven by a plaintiff to obtain recovery. The major factual issue at the summary judgment stage in asbestos litigation is whether plaintiff was exposed to the products of the defendant. The major legal issue is the degree of evidence necessary to show that exposure. The controlling principle in this case is that as a threshold to pursuing the lawsuit against a particular defendant, the plaintiff must produce sufficient evidence to support a finding that plaintiff was directly exposed to that defendant's asbestos-containing products. *Blackston*, 764 F.2d at 1482–1483.

Viewing the evidence submitted in the light most favorable to plaintiff and resolving all reasonable doubts about the facts in plaintiff's favor, *Sweat v. Miller Brewing Co.*, 708 F.2d 655, 656 (11th Cir.1983); *Impossible Electronics Techniques, Inc. v. Wackenhut Protective Systems, Inc.*, 669 F.2d 1026, 1031 (5th Cir. Unit B 1982), we hold that the defendant met its burden as moving party of showing the absence of a genuine issue of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970);

Fed.R.Civ.P. 56(c). The allegation that plaintiff was exposed to defendant's asbestos-containing product is not supported by reasonable inferences arising from the undisputed facts, but is based on speculation and conjecture that renders them mere guesses or possibilities. *Daniels v. Twin Oaks Nursing Home,* 692 F.2d 1321, 1326 (11th Cir.1982).

For the purposes of the summary judgment motion, the district court accepted as true the testimony of Lee at a discovery deposition and a videotape deposition in March 1982, shortly before his death, and the interrogatory answers filed in the case. The bulk of this testimony and interrogatory answers focused in detail on Lee's work with and exposure to the asbestos-containing products of other defendants. With regard to the products of all other defendants, Lee recalled specifically the names of the products, their descriptions, the job sites where he used them, and the procedure for applying these products. The testimony regarding defendant National Gypsum represented a departure from this pattern of specific recollection.

Lee testified that he had used and was exposed to a product called "Gold Bond cement." Gold Bond was the name given a National Gypsum product line which included a number of asbestos-containing products and products without asbestos. Unlike every other product identified by Lee at the deposition, Gold Bond cement could not be linked by Lee to any of the three jobs in which he came into contact with asbestos-containing products. He did recall that Gold Bond cement came in a box marked with the Gold Bond label and white and gold diagonal stripes. He stated that he used Gold Bond cement in relatively small portions "as an insulation material and as a sealer" in short-term emergency situations. He did not know whether Gold Bond cement contained asbestos, but he testified that he had inhaled dust from the cement in the course of applying it. He recalled applying Gold Bond cement as a sealant on pipes and for patchwork on sleeves, "mostly on steam or minor repairs."

In its February 14, 1984 Memorandum Opinion finding that there was no genuine issue of material fact and granting National Gypsum's motion for summary judgment, the district court stated:

The plaintiff's decedent, Jack Lee, testified prior to his death that he was around a product known as Gold Bond cement, that the product was used as a sealant, and that the product came in a box with gold and white diagonal stripes. Mr. Lee never identified Gold Bond Joint Compound.

Gold Bond Joint Compound, which, according to the documents submitted by the plaintiff, came in sacks, not boxes, contained asbestos. However, Gold Bond Joint Cement, which, according to the documents submitted by the plaintiff, came in a box, did not contain asbestos.

This order was based at least in part on an erroneous finding, as National Gypsum concedes that Gold Bond Joint Cement did contain asbestos. The parties subsequently called the district court's attention to its error regarding the asbestos content of Gold Bond Joint Cement. On February 27, 1984, plaintiff filed a motion for reconsideration of the district court's February 14 order. Plaintiff attached to her motion the excerpts from Lee's deposition and the interrogatory answers of National Gypsum. Attached to the interrogatories was a list of Gold Bond Joint Treatment Products, a line of asbestos-containing National Gypsum products used primarily in building construction to fill in wallboard at joints and cover nail holes. Plaintiff also submitted copies of a National Gypsum product brochure that pictured several joint treatment products, including a striped box labeled "Gold Bond Joint Cement." The excerpt from the product brochure did not contain a description of the products depicted or an explanation of their use, nor was there any indication whether or not the pictured products contained asbestos.

Plaintiff contended that these submissions were sufficient to create questions of material fact on the issue of whether "Gold Bond Joint Compound or Cement contained

asbestos, and whether plaintiff's decedent was exposed to the asbestos dust from these products." In its response to plaintiff's motion, National Gypsum expressly stated that it did not contest the fact that its joint treatment products contained asbestos in the past. Rather, it opposed plaintiff's motion on the grounds that Lee's testimony indicated the use of a Gold Bond product different from any of its joint treatment products.

■ The district court adopted National Gypsum's argument in denying plaintiff's motion for reconsideration. In the course of discussing its decision, the district court explained:

> In National Gypsum's answers to interrogatories, which the plaintiff submitted, National Gypsum states that its "Joint Treatment Materials" (sold under various trade names) from the 1930's through 1976 contained asbestos. However, in paragraph 2 of the general objections to those interrogatories, National Gypsum states that it answers those interrogatories "with reference to products that may have been used to insulate pipes, boilers, and similar installations, including such installations on ships, and products approved for use on ships." The plaintiff has submitted no evidence that Gold Bond Cement was used or approved for use as insulation material on the ships.

Thus, the district court's denial of plaintiff's motion for reconsideration provides the basis for affirming the order granting summary judgment despite the prior erroneous finding regarding Gold Bond Joint Cement. The record contains no indication that Gold Bond Joint Cement, or any other Gold Bond Joint Treatment product, was used or ever could have been used in the manner Lee described using "Gold Bond cement": as a sealant on pipes and for patchwork on sleeves to plug steam leaks. The record indicates that National Gypsum's joint treatment products were compounds, cements, and reinforcing tapes with a different purpose: finishing wallboard joints. National Gypsum only submitted the list of joint treatment products subject to its general objection, noted by the district court, that such products were not used or approved for use on ships or on pipes and boilers.

Plaintiff has made no effort to show that Gold Bond joint treatment products could be adapted to serve as a sealant for pipes and boilers. In all three of his jobs where exposure is alleged, Lee worked as a boilertender with duties of maintaining, repairing, and insulating steam boilers and pipes. The record does not indicate, and plaintiff does not argue, that these duties ever required him to work with or around wallboard installation products. Having failed to show that the asbestos-containing joint treatment products manufactured by National Gypsum were or could have been used in the manner Lee testified that he used "Gold Bond cement," plaintiff failed to show a genuine issue of material fact that the Gold Bond product used by Lee contained asbestos.

■ To find that plaintiff had made this required showing would require speculation that Lee might have improvised a wallboard filler as a steam pipe sealant. This cannot be done without engaging in an inquiry which "would be based on speculation or conjecture, and this is impermissible." *Ferguson v. National Broadcasting Co.*, 584 F.2d 111, 113 (5th Cir.1978).

■ Because the evidence showed clearly that Lee had substantial exposure to asbestos products of other manufacturers, and at most a very minimal exposure to this defendant's products, the defendant asserts that we could affirm the district court on a *de minimis* theory. We have carefully considered the arguments on both sides and do not decide whether such a theory is legally sound. The plaintiff argues that scientific evidence would show there is no acceptable theory that would defeat the proximate cause of plaintiff's injuries on a *de minimis* theory. Until a proper evidentiary record is made on this issue, we cannot know the factual base upon which such a theory would have to rest. The district court did not consider that theory, so it would be improper for an appellate court to do so, without the find-

ings of fact necessary to presentation of that legal issue for review.

AFFIRMED.

R. LANIER ANDERSON, III, Circuit Judge, dissenting:

Respectfully, I dissent because, in my judgment, the majority has failed to recognize the reasonable inferences in Lee's favor as is required in the summary judgment posture of this case. The relevant facts are as follows. Lee testified that he used and was exposed to a product called "Gold Bond Cement" that came in a box marked with the Gold Bond label and white and gold diagonal stripes. National Gypsum conceded that some of its products were packaged in the above-described manner and did contain asbestos. I respectfully suggest that the foregoing evidence raises a reasonable inference that Lee was exposed to asbestos from National Gypsum's product.

National Gypsum argues that Lee could not have been using the above-described asbestos-containing product because Lee used the product as a sealant on pipes and for patchwork on sleeves. National Gypsum argues that the evidence shows that the described asbestos-containing product would not have been used in the manner described by Lee, i.e., as a sealant on pipes and for patchwork on sleeves, but rather was designed for a different use, i.e., finishing wallboard joints. The majority adopts this argument of National Gypsum. Respectfully, I disagree. Lee has testified that he used and was exposed to a specifically described product, which National Gypsum acknowledges contained asbestos. Unless Lee's testimony that he used the product as a sealant on pipes and for patchwork on sleeves is so inherently incredible that it can be disregarded, in the current summary judgment posture, it seems clear to me that we are obliged to leave that credibility choice for the jury. I am not satisfied that Lee's testimony is inherently incredible solely because the product was designed for a different use, i.e., finishing wallboard joints. Nothing in the record establishes that the product could not be adapted for the use indicated by Lee, or that such adaptation is so foreign to the intended use of the product as to make Lee's testimony that he did in fact so use the product incredible.[1]

Accordingly, I dissent.

---

**1.** I find nothing in the record to suggest that National Gypsum also manufactures a non-asbestos product which is packaged in the precise manner indicated by Lee, i.e., in a box marked with the Gold Bond label and white and gold diagonal stripes, and which is designed for use as a sealant on pipes and for patchwork on sleeves. If there were such evidence, then it might be possible that the only reasonable inference from the evidence in this case would have been that Lee used the nonasbestos product packaged in the specified manner, rather than the asbestos-containing product thus packaged.