**Robb S. CHAPMAN and Leslie Chapman, as Parents of Deceased, John S. Chapman, and Robb S. Chapman, as Administrator of the Estate of John S. Chapman, Deceased, Plaintiffs/Appellants,**

v.

**AMERICAN CYANAMID CO., a Maine Corporation, Wyeth Laboratories, Division of American Home Products Corporation, a Delaware Corporation, and Wyeth Laboratories, Inc., a New York Corporation, Defendants/Appellees.**

No. 88–8000.

United States Court of Appeals, Eleventh Circuit.

Dec. 20, 1988.

Martin M. Pollock, Cohen, Pollock & Merlin, Atlanta, Ga., Anthony M. Colantoni, McDowell & Colantoni, Ltd., Susan Kathleen Sulfaro, Chicago, Ill., for plaintiffs-appellants.

David Kiser Whatley, Fortson & White, Mark Edward Colm, Atlanta, Ga., for American Cyanamid Co.

Lowell Steven Fine, Alembik Fine & Callner, Harvey R. Spiegel, Jane Fugate Thorpe, Atlanta, Ga., for Wyeth Labs.

Before TJOFLAT and FAY, Circuit Judges, and FAWSETT [*], District Judge.

FAWSETT, District Judge:

Six-week old John Chapman died on September 26, 1984, five days after he was inoculated with diphtheria-tetanus-pertussis ("DTP") vaccine. Thereafter, his parents, Robb and Leslie Chapman, filed a Complaint seeking compensation for their son's death against American Cyanamid Co. ("Lederle")[1], and against Wyeth Laboratories Division of American Home Products Corporation and Wyeth Laboratories, Inc., (collectively, "Wyeth"). In their Complaint, Plaintiffs alleged that either Defendant Lederle or Defendant Wyeth manufactured and distributed the DTP vaccine administered to their child. The Complaint stated claims based upon theories of strict liability in design defect, negligent design, inadequate warning and breach of implied warranty. On Defendants' motions, the District Court granted summary judgment in favor of both Defendants.

This Court has jurisdiction pursuant to Title 28, section 1291, United States Code.

The judgment is affirmed as to Defendant Wyeth and reversed as to Defendant Lederle.

The record at the time summary judgment was entered reveals the following. John Chapman's pediatrician, Dr. Walter A. Murray, opened his own medical practice office, Pediatric and Nutritional Counseling P.C., in April of 1984. At that time Dr. Murray took certain products, including DTP vaccine, from his former medical practice, Children's Clinical Center, P.A., in a quantity sufficient to carry the new practice through its first few months. In April of 1984, Children's Clinical Center had in stock only DTP vaccine manufactured by Lederle and Wyeth; it never ordered or carried DTP vaccine manufactured by Connaught Laboratories, another manufacturer of DTP vaccine which is not a party to this suit. Marty Draper, business manager for Children's Clinical Center, did not authorize removal of any DTP vaccine and was not aware that Dr. Murray had taken such product. Draper concluded that the quantity of vaccine taken was minimal and was not sufficient to meet the needs of Dr. Murray's practice for five to six months.

Gloria Murray, Dr. Murray's wife and an employee in the practice, recalled seeing the word "Connaught" on a product taken from Children's Clinical Center but did not know whether it was DTP vaccine or some other product manufactured by Connaught. Margaret Cox, Dr. Murray's office manager, recalled seeing Connaught DTP vaccine in the office when she began working in May of 1984 but did not remember the quantity of the product she saw on that day.

From May through September of 1984 either Margaret Cox or Melanie Murray Enbani ordered DTP vaccine for Dr. Murray's practice. The office policy was to order DTP vaccine on an "as-needed" basis directly from the manufacturer through its sales representatives. Additionally, office policy required that all receipts for pur-

---

[*] Honorable Patricia C. Fawsett, U.S. District Judge for the Middle District of Florida, sitting by designation.

1. Lederle Laboratories is a division of American Cyanamid Co. which manufactured diphtheria-tetanus-pertussis vaccine.

chases of products including DTP vaccine be kept for accounting purposes.

The office records revealed purchases of DTP vaccine only from Lederle during the period from May through September of 1984. On July 30, 1984, Dr. Murray's office purchased four vials of Lederle DTP vaccine; on August 27, 1984, it purchased eleven vials of the same product. Another purchase of Lederle vaccine was made on November 28, 1984, approximately two months after John Chapman received the immunization at issue. Mrs. Cox testified that she had no knowledge of which brand of DTP vaccine was ordered other than the information that she gleaned from the invoices.

During the period from May through September of 1984, it was likely that there were never more than seven to ten vials of DTP vaccine in the office at any one time. During this period, Dr. Murray administered five to ten shots per week to pediatric patients, although that number was not constant. The vaccine with the earliest expiration date was generally used first in Dr. Murray's practice.

Mrs. Cox made requests to Lederle, Wyeth and Connaught for copies of all invoices reflecting sales to Dr. Murray's office during the year 1984. Connaught sent no records in response to Mrs. Cox's request. Lederle replied that it was unable to provide any records because of a change in its record-keeping systems. Wyeth responded with one receipt for the purchase of Wycillin and Bicillin, both of which are antibiotics. In support of its motion for summary judgment, Wyeth produced an affidavit from its managing director stating that Wyeth did not sell or distribute DTP vaccine to Dr. Murray's office during the period from March 1, 1983 through September 25, 1984.

On September 21, 1984, Leslie Chapman brought her son to Dr. Murray's office for his "well-baby" check-up. Dr. Murray examined John and prescribed a DTP immunization.[2] The vaccination was administered by Margaret Cox. Dr. Murray was attending other patients at the time John received the vaccine and does not know the identity of the manufacturer of the vaccine John received. The manufacturer and lot number of the vaccine that Mrs. Cox administered to John was not recorded because Mrs. Chapman did not make such request. Dr. Murray testified that during this period DTP vaccine from both Lederle and Wyeth was in the office.

Mrs. Cox could not identify the manufacturer of the vaccine administered to John. Although she could find invoices reflecting purchases of DTP vaccine from Lederle only and although her knowledge as to what DTP vaccine was ordered was based upon the invoices she had located, Mrs. Cox stated that the vaccine in question could have been manufactured by either Lederle, Wyeth or Connaught. Mrs. Cox recalled that DTP vaccine from more than one manufacturer was in Dr. Murray's office from the time she started working in May of 1984 through September 21, 1984. This statement was based on her general recollection of the vaccine that was in the office when she began working there in May of 1984 and not on any specific recollection of the product that was in the office on September 21, 1984.

Mrs. Murray did not know which vaccine was administered to John nor did she know which manufacturers' vaccine was actually in the office at the time John received the immunization.

On February 21, 1985, Dr. Murray filled out a Report of Adverse Event Following Immunization. This report indicated that the vaccine given to John was manufactured by either Lederle or Wyeth. In an attempt to ascertain the identity of the manufacturer of the vaccine given to John Chapman, Plaintiffs' counsel wrote to Dr. Murray on at least two occasions requesting this information. Further, on June 11, 1985, Plaintiffs' counsel wrote to Mrs. Cox to confirm the substance of two telephone conversations in which Mrs. Cox indicated

---

**2.** DTP vaccinations are required by Georgia law. Ga.Code Ann. § 20–2–771 (1981). Several courts have discussed the risks associated with the DTP vaccine. *See, e.g., Jones v. Lederle Laboratories,* 695 F.Supp. 700 (E.D.N.Y.1988).

that the vaccine given to John was manufactured by Lederle. Mrs. Cox replied that, "based on this information, the DTP vaccine administered to John on September 21, 1984, most likely was by Lederle Laboratories." She later testified that her written response was based on the records of purchases of DTP vaccine but that she recalled DTP vaccine from more than one manufacturer in the office during the relevant time periods.

On July 28, 1987, Lederle filed a Motion for Summary Judgment. One day later, Wyeth filed a motion seeking the same relief. Each Defendant asserted that Plaintiffs could not establish the identity of the manufacturer of the vaccine administered to John Chapman, and therefore Plaintiffs could not fulfill the proximate cause element of their *prima facie* case under Georgia law. Plaintiffs responded that the record contained a basis to permit a jury to determine that one defendant or the other manufactured the vaccine. In the alternative, Plaintiffs urged the adoption of an alternate theory of liability which would permit Plaintiffs to recover under the circumstances of this case. The District Court interpreted Plaintiffs' argument as one which advanced "industry-wide" or "market share" theories of liability against several defendants and concluded that such theories are not cognizable under Georgia law. The Court granted summary judgment as to both Defendants on the ground that Plaintiffs "cannot prove that either [Lederle's or Wyeth's] product caused their son's death." Thereafter, Plaintiffs filed their Notice of Appeal.

## I

Plaintiffs first contend that the District Court improperly granted summary judgment because the evidence provides a sufficient basis from which a jury could infer that Lederle or Wyeth manufactured the vaccine administered to John Chapman. Defendants maintain that the District Court was correct in granting summary judgment because Plaintiffs cannot prove which Defendant's vaccine was administered to John Chapman without relying upon inferences which are pure speculation and conjecture. Thus, Defendants argue, Plaintiffs cannot establish the proximate cause element of a *prima facie* case.

As a preliminary matter, we discuss the appropriate standard of review. "Rule 56(c) mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). "The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict—'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed.'" *Id.* at 252, 106 S.Ct. at 2512 (emphasis in original) (quoting *Improvement Co. v. Munson,* 81 U.S. (14 Wall.) 442, 448, 20 L.Ed. 867 (1872)). *See Brown v. City of Clewiston,* 848 F.2d 1534 (11th Cir.1988).

In considering the appeal from a District Court's entry of summary judgment, we view the evidence in the light most favorable to the non-moving party. *Meyers v. Ramada Hotel Operating Co., Inc.,* 833 F.2d 1521 (11th Cir.1987). All reasonable inferences arising from the undisputed facts should be made in favor of the non-movant. However, an inference based on speculation and conjecture is not reasonable. *Blackston v. Shook & Fletcher Insulation Co.,* 764 F.2d 1480, 1482 (11th Cir.1985); *Lee v. Celotex,* 764 F.2d 1489 (11th Cir.1985). At the summary judgment stage, it is not the function of the Court to weigh the evidence and determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Where the circumstantial evidence and reasonable inferences drawn therefrom create a genuine

issue of material fact for trial, summary judgment is improper. *Id.*

■ Under Georgia law,[3] a plaintiff must prove that a defendant's product was the "proximate cause" of his injuries whether the plaintiff proceeds under a theory of negligence or strict liability. *Lewis v. Atlanta Casualty Co.*, 179 Ga.App. 185, 345 S.E.2d 858 (1986); *Talley v. City Tank Corp.*, 158 Ga.App. 130, 134, 279 S.E.2d 264 (1981). In the instant case, Plaintiffs must satisfy this proximate cause requirement by showing that their son's death was caused by exposure to DTP vaccine manufactured or distributed by a particular Defendant. *See Blackston*, 748 F.2d at 1482. The standard of proving proximate causation under Georgia law is by a preponderance of the evidence. *Orkin Exterminating Co. v. Callaway*, 126 Ga.App. 431, 190 S.E.2d 827 (1972). Such evidence may be circumstantial rather than direct. *Duncan & Stancil, Inc. v. Peden*, 159 Ga.App. 77, 282 S.E.2d 708 (1981). This Court has noted that "[t]he line between circumstantial evidence sufficient to support a finding under a substantial evidence standard and evidence which merely permits conjecture or speculation is difficult to draw." *Blackston v. Shook & Fletcher Insulation Co.*, 764 F.2d at 1482.

In *Blackston v. Shook & Fletcher Insulation Co.*, this Court addressed the issue of the sufficiency of evidence necessary to establish proximate cause under Georgia law. In *Blackston*, one of the first asbestos-related injury cases to come before this Court, the plaintiff, a pipefitter, alleged injuries arising from exposure to an asbestos product which had been used by the defendant in installing insulation at the paper mill where the plaintiff was employed. Because the plaintiff was unable to remember the manufacturer of the product, he presented the affidavits of two men who were employed as insulators at the mill to establish the identity of the product utilized by the defendant. The plaintiff, however, was unable to show that he worked in the same vicinity of the plant as the two witnesses.

The District Court granted summary judgment for the defendant, reasoning that the plaintiff could have worked in a different area and thus inhaled dust created by another company's asbestos products. This Court affirmed on the basis that the plaintiff had failed to show the causal connection required under Georgia law between the product used by defendant and the plaintiff's injuries.[4] *Id.* at 1482–83.

■ In the instant case, Plaintiffs' evidence that their son was exposed to Lederle's vaccine is more compelling than the evidence of exposure presented in *Blackston*. Although Plaintiffs concede that they can produce no direct evidence as to which brand of DTP vaccine John Chapman received, Plaintiffs have produced substantial circumstantial evidence from which a reasonable jury could conclude that the vaccine administered to their son was manufactured by Defendant Lederle.[5]

Except for the DTP vaccine that was taken from Dr. Murray's former practice to his new practice in April of 1984, all other vaccines were purchased directly from the manufacturer through sales representatives. Dr. Murray's staff retained all documents of product purchases for accounting purposes. When Mrs. Cox searched these documents to determine which vaccines were used during the summer of 1984, she discovered DTP vaccine invoices from Lederle only. Despite her direct requests to both Wyeth and Connaught, no invoices reflecting the purchase of DTP vaccine from these companies were found.

---

**3.** Because jurisdiction is founded upon diversity of citizenship, the law of the forum state, Georgia, applies in this case. *See* 28 U.S.C. § 1332.

**4.** This Court declined the plaintiff's invitation in *Blackston* to create a presumption of exposure to a particular defendant's product once it has been shown that the defendant's asbestos products were used at the job site in question.

**5.** *Senn v. Merrell–Dow Pharmaceuticals, Inc.*, 850 F.2d 611 (9th Cir.1988), a case involving the DTP vaccine, appears to be factually distinguishable as the plaintiffs in *Senn* failed to provide evidence which linked the inoculation administered in the physician's office with a defendant's product.

The invoices that Mrs. Cox produced disclosed that Dr. Murray's office received shipments of Lederle DTP vaccine on or about July 30, 1984 (4 vials); August 27, 1984 (7 vials), and November 28, 1984 (10 vials). A single vial of DTP vaccine contains approximately 15 doses. Thus, as of August 27, 1984, at least 105 doses of Lederle DTP vaccine were in Dr. Murray's office, not including any doses remaining from the July 30 shipment from Lederle.

The record establishes that during the summer of 1984, Dr. Murray's office staff administered no more than five to ten DTP immunizations per week. Based on this record, no more than forty injections could have been administered between August 27 and September 21. Thus, at least 65 doses of Lederle DTP vaccine remained in Dr. Murray's office at the time John received his immunization. As noted previously, the record reflects that DTP vaccine was ordered on an "as needed" basis, the vaccine with the earliest expiration date was used first, and no records of purchase of DTP vaccine from any manufacturer other than Lederle could be produced.

Taking the evidence in the light most favorable to Plaintiffs, reasonable jurors could discount the testimony of Dr. Murray and Mrs. Cox that Wyeth and Connaught DTP vaccines were or could have been present in the office at the time John received his immunization in view of the evidence that no DTP vaccine was purchased from Wyeth or Connaught by Dr. Murray's new office and that the DTP vaccine taken from Children's Clinical Center was insufficient to meet the needs of Dr. Murray's practice after five months.

While the burden remains on Plaintiffs to prove by a preponderance of the evidence at trial that Lederle's vaccine was administered to their child on September 21, 1984, and that the vaccine was the proximate cause of the injuries of which they complain, the Court finds that the record contains evidence creating a genuine issue of material fact on the issue of exposure to the Lederle DTP vaccine sufficient to preclude summary judgment. We agree that Plaintiffs produced insufficient evidence for a jury to find that John Chapman received DTP vaccine manufactured by Defendant Wyeth.

## II

██ In their second point on appeal, Plaintiffs assert that the District Court erred in foreclosing Plaintiffs from proceeding under the theory of alternative liability first announced in *Summers v. Tice,* 33 Cal.2d 80, 199 P.2d 1 (1948),[6] and subsequently adopted in the Restatement (Second) of Torts, section 433B(3). Georgia courts have not embraced the concept of alternative liability. *Starling v. Seaboard Coast Line R. Co.,* 533 F.Supp. 183 (S.D. Ga.1982). We decline to adopt this rule for Georgia.[7] *Compare Rhynes v. Branick Manufacturing Co.,* 629 F.2d 409 (5th Cir. 1980) (refusing to adopt "product line" rule in product liability case governed by Texas law when there was no assurance Texas courts would do so). Accordingly, the Court holds that the District Court correctly entered summary judgment in favor of Defendants and against Plaintiffs on this theory of recovery.

## III

In conclusion, we AFFIRM the District Court's entry of summary judgment in favor of Defendant Wyeth, REVERSE the entry of summary judgment in favor of Defendant Lederle, and REMAND this case for further proceedings as to Defendant Lederle in accordance with this opinion.

**6.** In *Summers v. Tice,* each of two hunters negligently fired shots toward the plaintiff, but the plaintiff was unable to show which hunter had fired the bullet that struck him. The California court reversed traditional tort burdens of proof and required each defendant to bear the burden of proving himself not to have been the responsible actor.

**7.** This Court has previously rejected invitations to expand Georgia tort law to include "market share" or "industry-wide" theories of liability. *See Blackston v. Shook & Fletcher Insulation Co.,* 764 F.2d 1480 (11th Cir.1985); *Lee v. Celotex Corp.,* 764 F.2d 1489 (11th Cir.1985).