## A90A1192. HALL v. SCOTT USA, LTD. et al.
(400 SE2d 700)

COOPER, Judge.

Appellant brought this products liability action for injuries to his eye sustained in a fall from a motorcycle during a motorcross event. At the time of his injury, appellant was wearing protective goggles, and attached to the goggle lens was a cleaning device called "Roll-Off's by Smith" which broke apart upon impact with the ground causing the injuries. The complaint alleged strict liability in tort and negligence and charged that under the names "Scott," "Smith Goggles" and "Smith Goggle Company," appellees Scott USA, Ltd. ("Scott") and its general partner, CTF Enterprises, Inc. ("CTF"), defectively manufactured and designed Roll-Off's and failed to provide warnings of the hazards of using the product. Appellees answered the complaint and denied designing, manufacturing, marketing or distributing Roll-Off's or its packaging and further denied doing business as "Smith Goggles" or "Smith Goggle Company." Appellees filed a third-party claim against DFG, Inc., Michael Brunnetto-Trustee, Irene Bardeen Alpine Trust and Smith Goggles alleging they were the actual designers, manufacturers and distributors. After discovery proceeded between appellees and third-party defendants, appellant amended his complaint to allege instead that appellees manufactured the lens and goggle in conjunction with third-party defendants; that third-party defendants, doing business as "Sport Optics" and "Smith Goggles," actually assembled Roll-Off's and attached it to the goggle lens; and that appellees authorized the marketing of its products under the names "Smith" or "Roll-Off's." Appellant moved to add third-party defendants as party defendants, and the trial court denied the motion. Appellees moved for summary judgment, and appellant requested a continuance of the hearing on the motion for summary judgment pursuant to OCGA § 9-11-56 (f) to allow for additional discovery. The trial court denied appellant's motion for a continuance but granted the motion for summary judgment, and this appeal followed.

1. In his first enumeration of error, appellant contends the trial court erred in denying his motion to add and change the designation of third-party defendants. Appellant's injury occurred on February 1, 1987, and appellees' action against third-party defendants was filed on September 1, 1988. The two-year statute of limitation on appellant's action expired on January 31, 1989, and six months later, on July 28, 1989, appellant moved the court to add and change the designation of the parties pursuant to OCGA §§ 9-11-14 and 9-11-21. In the original complaint, in addition to naming Scott and CTF as defendants, appellant stated that he anticipated adding "some individuals who are all presently residents of the State of Idaho who partici-

pated in the design, fabrication and manufacture of the product giving rise to the within stated claim" and argues on appeal that on the basis of that statement which he contends constituted a proper "John Doe" pleading (OCGA § 9-11-10 (a)), he should have been permitted to add or redesignate third-party defendants as party defendants pursuant to OCGA § 9-11-15 (c) despite the running of the statute of limitation. Appellant argues that the third-party defendants received notice of the action and their defense would not have been prejudiced if they had been redesignated as party defendants.

In *Robinson v. Bomar*, 122 Ga. App. 564 (2) (177 SE2d 815) (1970), this court held that leave of court is required to change a third-party defendant to a party defendant concluding that the change materially altered the status and exposure of the third-party defendant. In *Robinson*, since the plaintiffs did not obtain leave of court and no order was taken making the third-party defendant a party defendant within the applicable statute of limitation, the court held that the plaintiffs were barred by the statute of limitation from asserting their claim against the third-party defendant. *Robinson*, supra at 568. In the instant case, appellant sought leave of court six months beyond the statute of limitation; however, appellant argues on appeal that the instant case is distinguishable because the original complaint was filed as a "John Doe" pleading. "OCGA § 9-11-10 provides that a complaint may designate a party whose name is not known by any name and when the true name is determined, 'the pleading may be amended accordingly.' OCGA § 9-11-15 allows for amending pleadings to change parties at any time before the pretrial order is entered . . . such an amendment will relate back for purposes of the applicable statute of limitation [if certain conditions are met]." *Harper v. Mayor &c. of Savannah*, 190 Ga. App. 637 (1) (380 SE2d 78) (1989). In the instant case, appellant named only Scott USA and CTF Enterprises and did not designate an unknown defendant by "John Doe" or any other fictitious name; therefore, the complaint was not an effective "John Doe" pleading pursuant to OCGA § 9-11-10. However, OCGA § 9-11-15 has not been restricted to instances in which parties are substituted, but OCGA § 9-11-15 (c) has been broadly interpreted "to sanction relation back of amendments which *add* or drop parties. . . ." *Cobb v. Stephens*, 186 Ga. App. 648, 649 (368 SE2d 341) (1988). None of the cases interpreting the statute in this regard has done so in the context of the addition of the third-party defendant after the expiration of the statute of limitation. In *Robinson*, concerning the addition of a third-party defendant, this court held that "the adding or dropping of parties requires the exercise of a discretion by the court. . . ." *Robinson*, supra at 567. In the exercise of its discretion in determining whether to add parties pursuant to OCGA § 9-11-21, the trial court should consider "whether the

new party will be prejudiced thereby and whether the movant has some excuse or justification for having failed to name and serve the new party previously. [Cits.]" *Horne v. Carswell*, 167 Ga. App. 229, 230 (306 SE2d 94) (1983). In *Bil-Jax, Inc. v. Scott*, 183 Ga. App. 516, 517 (359 SE2d 362) (1987), the court stated that motions to amend were to be left to the discretion of the trial court, which would consider whether the party sought to be added "knew or should have known that the [action] would have been brought against it." *Bil-Jax*, supra at 517. While the record demonstrates that third-party defendants were aware of the appellant's charges against appellees at least as of the filing of the third-party complaint on September 1, 1988, and were defending against appellees' claims by October 1988, appellant offered no excuse for the delay in attempting to add third-party defendants. Accordingly, we find that in the exercise of its discretion, the trial court did not err in denying appellant's motion.

2. Appellant next contends the trial court erred in granting the motion for summary judgment on the basis that appellees did not design, fabricate, manufacture, market or distribute Roll-Off's, nor were they aware of modifications or alterations made to its lens by subsequent purchasers which required appellees to warn against such alterations. Viewing the evidence in favor of appellant, the party opposing the motion for summary judgment, we find the following: The packaging indicates that Roll-Off's is a film advance system manufactured by Smith Goggle. It consists of a roll of clear plastic which extends in front of a goggle lens so that when mud is thrown on the lens, the film can be advanced from a canister mounted on one side of the lens to a canister on the other end thereby providing the wearer with a clear view through the plastic film. Roll-Off's can be purchased premounted on lenses made by Smith and by appellees, yet are also adaptable to many other lenses and shields. In the instant case, the Roll-Off's was pre-mounted on a lens manufactured by appellees and worn by appellant in goggles also manufactured by appellees. The box in which the product was purchased bore Scott's name in two places. The back of the box read, "Roll-Off's are available premounted on SMITH or Scott goggle lenses. Adaptable to many other lenses and shields," and the side read, "Mounted on SCOTT Lexan Lens." Most prominent on the box, however, was the name of the product, Roll-Off's by Smith. Interrogatory responses reveal that Smith Goggle was a trademark owned by Sport Optics, a general partnership of which Irene Bardeen Alpine Trust was a principal, and that Sport Optics had a contract with DFG, Inc., for the assembly of the canisters, the mounting of the canisters to lenses and distribution of the product. Appellant's counsel provided an affidavit in defense of the motion in which he stated there also was a direct contract between appellees and DFG, Inc.; however, there is no evidence of the contents of the

contract, nor was it produced.

In the complaint, appellant alleged that one of the canisters broke, injuring his eye; that the canisters and attachment points were made of hard, brittle plastic, not suitable for their intended use; and that the placement of the canisters was likely to cause injury. On appeal, appellant maintains that based on a "three-way contract" between appellees, DFG, Inc., and Sport Optics and the packaging of Roll-Off's which bore Scott's name, he demonstrated that appellees manufactured its lenses to be component parts of Roll-Off's and that the combination of the goggle, lens and canisters was as a whole a defective product causing the injury.

"Whether proceeding under a strict liability or a negligence theory, 'proximate cause' is a necessary element of appellant's case. [Cits.]" . . . "Under [OCGA § 51-1-11 (b)] strict liability is imposed for injuries suffered 'because the property when sold by the manufacturer was not merchantable and reasonably suited to the use intended and its condition *when sold* is the proximate cause of the injury sustained.' Thus the injury must be the proximate result of a defect in the product which existed at the time sold." *Talley v. City Tank Corp.*, 158 Ga. App. 130, 134 (3) (279 SE2d 264) (1981). It is undisputed that appellant's injury was due to the breaking apart of one of the canisters and that appellees had no role in the design, fabrication, manufacture, distribution or marketing of the canisters, in their placement on the lens, nor in the packaging of Roll-Off's. In addition, despite the affidavit provided by appellant's attorney in which he declares the existence of a contract between appellees, DFG, Inc., and Sport Optics, no such contract appeared in the record before the trial court and there is no other evidence that appellees authorized the marketing of its lenses by Sport Optics or Smith Goggles. "Generally, the determination of whether the component manufacturer is insulated from liability [for failure to warn of inherent dangers] depends upon the extent to which the product is altered by the assembler before it reaches the ultimate user. . . . [I]t would be 'an unwarranted extension of the theory of strict liability' to ignore significant changes to the product made by an intermediary." *Giordano v. Ford Motor Co.*, 165 Ga. App. 644 (1) (299 SE2d 897) (1983). Appellant has alleged no defect in the original design of the lens or goggles; what appellant contends was defective and caused his injury was added to the lens after it was sold by appellees. "One of the conditions for imposition of strict liability against a manufacturer of 'defective' products is that the product 'is expected to and *does reach the user or consumer without substantial change* in the condition in which it is sold.' (Emphasis supplied.) [Cit.] In some cases it may be a jury question as to whether the product's original design has been merely slightly or somewhat modified. In such cases, the jury must determine whether

the original manufacturer's design was defective and, if so, whether the proximate cause of the injuries sustained was the original defective design or the subsequent modification." *Talley*, supra at 135. In the instant case, there is no evidence that the lens, when sold by appellees, was defective; that the lens was manufactured to be a component part of Roll-Off's; that appellees had a role in the design, fabrication, manufacture and placement of the canisters on the lenses or that appellant's injuries were proximately caused by the original design of the lens. Therefore, no jury question exists. "A manufacturer has the absolute right to have his strict liability *for injuries* adjudged on the basis of the design of its own marketed product and not that of someone else. [Cit.]" Id. We conclude that as to the strict liability, appellees are not liable as manufacturers of the product which was ultimately purchased by appellant and caused his injuries and therefore, had no duty to warn. Appellant also failed to demonstrate that appellees authorized the marketing of its lens by other parties. Accordingly, the trial court did not err in granting summary judgment as to appellant's claims predicated on strict liability.

As to appellant's claim founded in negligence, our inquiry is whether " ' "(t)he maker of an article for sale or use by others [has used] reasonable care and skill in designing it . . . so that it is reasonably safe for the purposes for which it is intended, *and for other uses which are foreseeably probable. . . .*" ' (Emphasis supplied.) [Cits.]" *Ford Motor Co. v. Stubblefield*, 171 Ga. App. 331, 335 (2) (319 SE2d 470) (1984). Appellant argues that based upon the contract discussed above, it was foreseeable that the lenses would become a component part of Roll-Off's. However, as discussed above, there is no evidence that lenses were being produced by appellees for such a purpose. It appears from the record that the lenses were fully capable of being used in connection with goggles without Roll-Off's. In addition, the negligence claim must also fail due to appellant's failure to establish proximate cause. *Union Carbide Corp. v. Holton*, 136 Ga. App. 726 (1) (222 SE2d 105) (1975).

3. In his third enumeration of error, appellant argues that the court erred in denying his motion for a continuance pursuant to OCGA § 9-11-56 (f) to allow for additional time for the production of documents to demonstrate a contractual relationship between appellees and third-party defendants pursuant to OCGA § 9-11-56 (f). The record shows that the complaint was filed on December 21, 1987, the third-party complaint was filed on September 1, 1988, and on May 17, 1989, the court extended discovery for six months. Appellees' motion for summary judgment was filed on July 10, 1989, and on July 28, 1989, appellant served its first discovery requests on third-party defendants. The motion for summary judgment came before the court for argument on December 18, 1989, at which time, appellant re-

quested additional time for discovery, particularly for the production of the alleged contract between appellees, Sport Optics and DFG, Inc. In an affidavit, appellant's counsel explained that he was working with the other parties to facilitate the production of additional discovery; nevertheless, the court denied appellant's motion. The decision to grant a continuance is a matter within the discretion of the trial court. OCGA § 9-11-56 (f). Based on our review of the record, we do not find that the trial court abused its discretion.

*Judgment affirmed. Banke, P. J., and Birdsong, J., concur.*

DECIDED DECEMBER 5, 1990 —
REHEARING DENIED DECEMBER 20, 1990 —

*Bedford, Kirschner & Venker, Andrew R. Kirschner, Thomas J. Venker*, for appellant.

*Duncan & Mangiafico, George D. Duncan, Jr., Webb, Carlock, Copeland, Semler & Stair, Kent T. Stair, Robert W. Browning, McLain & Merritt, Howard M. Lessinger*, for appellees.