United States Court of Appeals,

Eleventh Circuit.

No. 95-8603.

William K. CARMICAL, Plaintiff-Appellant,

v.

BELL HELICOPTER TEXTRON, INC., A SUBSIDIARY OF TEXTRON, INC., General Motors Corporation, Defendants-Appellees.

July 21, 1997.

Appeal from the United States District Court for the Northern District of Georgia. (No. 1:91-cv-602-CC), Clarence Cooper, Judge.

Before HATCHETT, Chief Judge, BIRCH, Circuit Judge, and CLARK, Senior Circuit Judge.

CLARK, Senior Circuit Judge:

Plaintiff-appellant William K. Carmical ("Carmical") filed this action against defendants-appellees Bell Helicopter Textron, Inc. ("Bell") and General Motors Corporation ("General Motors") after the helicopter he was piloting crashed.[1] The district court granted Bell's and General Motors' renewed motion for summary judgment. We affirm.

*BACKGROUND*

In 1978, Bell manufactured and sold a Bell 206B Model helicopter powered by an engine designed by the Allison Gas Turbine Division of General Motors. Carmical was piloting the helicopter when it crashed on March 22, 1989, and was injured.

An investigation by the National Transportation Safety Board concluded that the helicopter crashed when the spur adapter gearshaft of the engine's compressor unit failed. The spur adaptor gearshaft failed when it did not receive the proper lubrication from the oil delivery piccolo tube.

---

[1] Carmical's complaint alleged negligence, breach of warranty, and strict liability. The district court granted Bell's and General Motors' motion for summary judgment on the negligence and strict liability claims, finding them barred by the statute of limitations, and dismissed the breach of warranty claim. Although Carmical did not object to dismissal of the breach of warranty claim, he appealed the grant of summary judgment. This court reversed, and remanded for further proceedings on the negligence and strict liability claims. *Carmical v. Bell Helicopter Textron, Inc.,* No. 92-8703, 999 F.2d 1583 (11th Cir. Jul. 28, 1993). This appeal addresses proceedings on remand.

The piccolo tube was missing an inlet screen filter and contained metal chips in the exit end. The metal chips were not made of the same metal as the piccolo tube or any other part at use in the engine.

Bell and General Motors again moved for summary judgment, arguing that Carmical had failed to show that the engine malfunction was attributable to them. They relied on the affidavit of General Motors employee Brian Stevenson who stated that the "most likely source of the metal contamination was improper maintenance practices" in which General Motors was not involved. Carmical moved to compel discovery against Bell Helicopter, arguing that it had failed to comply with his limited request for "any and all accident reports" and "engine failure reports" related to helicopters with Bell's 250-C20 model engine and involving the engine compressor assembly.[2] The district court granted Carmical's motion to compel, finding the discovery request as limited "appropriate and not deficient," and denied the motions for summary judgment without prejudice.[3]

Bell and General Motors renewed their motions for summary judgment, and Carmical moved, pursuant to Fed.R.Civ.P. 56(f), for an extension of time to respond to the motions alleging that additional discovery was necessary. He claimed that Bell had agreed to produce the documents and agreed that Carmical would be allowed to inspect the documents at Bell's Ft. Worth, Texas plant. Although Bell had originally estimated that it had three file boxes of documents responsive to the request, only one box of documents was produced. Carmical requested permission to take the deposition of the document custodian and "the individual that provided the information to Bell's counsel that three boxes existed and the copying costs would be $3,300.00."[4] The district court allowed Carmical "confirmation that all of the documents responsive to the Document Request were produced" and granted him an extension of time to file a response to the summary judgment motions pending receipt of a response from Bell.[5]

---

[2]R4-65.

[3]R4-73 at 2-3.

[4]R4-78 at 4.

[5]R4-85 at 4-6.

Bell filed an affidavit of its employee, Mark C. Stuntzner, who had provided the estimate of the costs of copying the records responsive to the request for accident and engine failure reports involving the compressor assembly of the 250-C20 engine. Stuntzner stated that the responsive records included documents, microfiche and color photographs. He said that he "pulled all of the responsive files and put them in one box so that they could be produced for inspection" and that Bell had produced for inspection "all of the documents ordered to be produced for inspection."[6] Carmical had the opportunity to inspect those documents.

The district court granted the summary judgment, finding that Carmical had failed "to rebut the Defendants' contention that the failure to have the inlet screen in place and the introduction of foreign metals into the oil delivery system were the only proximate causes of the crash."[7] Carmical appeals.

*DISCUSSION*

I. The Discovery Issue

Carmical argues that the district court erred in denying his request to depose Bell's document custodian because this would have led to the discovery of additional responsive documents.

When considering a motion for summary judgment, a district court may grant a continuance pursuant to Rule 56(f) when a party cannot present by affidavit facts essential to the party's opposition.[8] This court reviews a district court's ruling on a Rule 56(f) motion for abuse of discretion,[9] and will not overturn such an order unless it is shown that the district court's ruling resulted in substantial harm to appellant's case.[10]

---

[6]R4-87 at 3.

[7]R4-93 at 6.

[8]Fed.R.Civ.P. 56(f).

[9]*Wallace v. Brownell Pontiac-GMC Co., Inc.,* 703 F.2d 525, 527-528 (11th Cir.1983).

[10]*Cox v. Administrator U.S. Steel & Carnegie,* 17 F.3d 1386, 1413 (11th Cir.1994) [quoting *Arabian American Oil Co. v. Scarfone,* 939 F.2d 1472, 1477 (11th Cir.1991) ], *modified on other grounds,* 30 F.3d 1347 (1994), *cert. denied,* 513 U.S. 1110, 115 S.Ct. 900, 130 L.Ed.2d 784 (1995).

Carmical has made no showing that the district court's ruling resulted in substantial harm to his case. By affidavit, Bell's custodian of the documents, Mark Stuntzer, explained that he had made the original estimate of the costs of copying the records, and acknowledged that, after he compiled the records, he put them in one box. He stated that Bell had produced all of the documents ordered to be produced. The fact that the documents filled one box instead of three once they were compiled does not mean that there were documents responsive to the request that were not produced or that deposing Stuntzner would have led to the discovery of additional documents. In fact, a deposition may have only reemphasized his claim that all of the documents were produced. Because it does not appear that substantial harm was done to Carmical's request by the denial of the Rule 56(f) motion, we decline to hold that the district court abused its discretion in denying the motion.

II. The Liability Issue

Carmical argues that the district court erred in granting summary judgment because the helicopter was defective when sold. He claims that the spur adaptor gearshaft in the engine was defectively designed and Bell and General Motors are liable based on their failed duty to warn that the gearshaft was susceptible to failure if the oil flow was reduced or that the lubrication system was not functioning properly.

This court reviews the district court's grant of summary judgment *de novo,* with all facts and reasonable inferences therefrom reviewed in the light most favorable to the nonmoving party.[11] Summary judgment may be appropriate in a Georgia products liability action where a defendant can show that, by balancing the equities of a product's risk against its utility, the lack of a defect is plain and indisputable.[12] To prevail in a Georgia products liability action, whether based on negligence or strict liability, a plaintiff must show that the proximate cause of the injury was a defect which existed when the product was sold.[13] If the product design has been independently altered,

---

[11]*Hale v. Tallapoosa County,* 50 F.3d 1579, 1581 (11th Cir.1995).

[12]*Raymond v. Amada Co., Ltd.,* 925 F.Supp. 1572, 1578 (N.D.Ga.1996).

[13]O.C.G.A. § 51-1-11(b)(1) (Supp.1995); *Hall v. Scott USA, Ltd.,* 198 Ga.App. 197, 400 S.E.2d 700, 703 (1990), *cert. denied* (1991).

eliminated or replaced by a third party after the sale of the product, and injuries result after the alteration, those injuries cannot be the proximate result of the manufacturer's original design.[14]

Carmical's claim of an unspecified design defect in the spur adaptor gearshaft is unsupported by the evidence in the record. As designed and sold, the helicopter included an inlet screen necessary to keep contaminants from entering and blocking the piccolo oil delivery tube. After the crash, an investigation revealed that the inlet screen had been removed and not replaced.

Carmical points to eleven other accidents in which the gearshaft failed due to severe wear, his own expert testified that there was no indication that these other gearshaft failures were caused by a lack of lubrication. Carmical also argues that a General Motors report recognized and acknowledged a design defect in the lubrication system which could cause the spur adapter gearshift to fail. The report, which was prepared during the design of the engine part and before the manufacture of the engine, indicates that the lubrication failure resulted from the "nozzle" being "clogged due to foreign material/coke."[15] To prevent such a clogging, an inlet screen was included to keep debris out of the oil delivery system. With an inlet screen filter left out of the engine assembly, debris could enter the piccolo tube.

Carmical also contends that the helicopter was defective because there was no system to warn that the gearshaft was susceptible to failure if the oil flow was reduced.

In order to show a breach of a duty to warn, a plaintiff must show that (1) the defendant knew, or had reason to know, that the product is likely to be dangerous for the intended use; (2) the defendant had no reason to believe that the user would realize the danger; and (3) the defendant failed to exercise reasonable care to inform the user about the danger.[16] In design defects products liability cases, Georgia utilizes a risk-utility analysis, in which the risks inherent in the product design are balanced against the utility of the designed product and the manufacturer's reasonableness in choosing the design, including the probability and seriousness of the risk posed by the design, the

---

[14]*Talley v. City Tank Corp.,* 158 Ga.App. 130, 279 S.E.2d 264, 269 (1981), *cert. denied.*

[15]Exh. Stevenson Deposition at 39, Exh. 11 at 2.

[16]*Greenway v. Peabody International Corp.,* 163 Ga.App. 698, 294 S.E.2d 541 (1982).

usefulness of the design, and the burden on the manufacturer to take the necessary steps to eliminate the risk.[17] The trier of fact may consider evidence of whether, at the time of manufacture, an alternative design would have made the product safer and was marketable and technologically feasible.[18] A manufacturer will not be held liable for a failure to warn when any injuries clearly resulted from negligent installation or maintenance occurring after the product left the manufacturer, and the product was sold to a commercial operator who may reasonably have been expected to be familiar with the dangers resulting from such misuse or neglect.[19]

Carmical acknowledged that he knew that a lack of lubrication to the spur adaptor gearshaft would cause it to fail. He also states in his reply brief that "it is apparent to anyone operating a vehicle with an oil lubricated engine, whether by land, sea, or air, that a loss of lubrication could result in an engine failure."[20] Because Carmical was familiar with the dangers resulting from negligent maintenance which might lead to a loss of lubrication, there was no duty to warn that the gearshaft might fail due to a loss of lubrication.

Finally, Carmical argues that the Bell 206B helicopter should have been equipped with a warning light system that would alert the pilot of a reduction in the oil flow to the spur adaptor gearshaft. Carmical's injuries were proximately caused by the lack of lubrication or the absence of the inlet screen, and Carmical was aware that a reduction in the oil flow to the gearshaft would cause it to fail. Carmical's expert did not know whether a warning light capable of detecting a reduction of the oil flow to the spur adaptor gearshaft would have been feasible or appropriate, because that was not within his area of expertise. Carmical presented no other evidence that such a warning light was feasible or appropriate.

*CONCLUSION*

---

[17]*Banks v. ICI Americas, Inc.,* 264 Ga. 732, 450 S.E.2d 671, 673 (Ga.1994), *reconsideration denied.*

[18]*Id.* 450 S.E.2d at 673-675.

[19]*Omark Industries, Inc. v. Alewine,* 171 Ga.App. 207, 319 S.E.2d 24, 25-26 (1984), *cert. denied.*

[20]Reply brief at 6.

Because Carmical failed to produce evidence that the crash was proximately caused by a defect in the helicopter and to rebut Bell's and General Motor's argument that the crash was proximately caused by the failure to have the inlet screen in place and the introduction of foreign materials into the oil delivery system, his claim fails as a matter of law. The district court's grant of summary judgment to the defendants is, therefore, AFFIRMED.