[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-15703
_____

D.C. Docket No. 1:11-cv-01407-CAP


MIKE THURMON,
in his capacity as Executor of the Estate of
William H. Thurmon, Sr., deceased,
MARY K. THURMAN,
HELEN JOHNSON,
WILLIAM H. THURMON, JR.,
GEORGE THURMON,
ESTHER RIDENHOUR,
MARK THURMON,
PATRICIA GUTHRIE,
JOAN GREENLESS,
JULIE CHAMBERS,
in their capacities as the surviving children of
William H. Thurmon, Sr., deceased,

Plaintiffs-Appellants,

JIM CHAMBERS,
in his capacity as Executor of the Estate of
William H. Thurmon, Sr., deceased,

Plaintiff,

versus

GEORGIA PACIFIC, LLC, et al.,

Defendants,

CRANE CO.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(May 27, 2016)

Before HULL and WILSON, Circuit Judges, and MARTINEZ,[*] District Judge.

HULL, Circuit Judge:

In this products liability action, the plaintiffs appeal the district court's grant

of Defendant Crane Co.'s motion for summary judgment.  The district court found

that the plaintiffs failed to prove that a Crane Co. product proximately caused the

decedent's asbestos-related injuries.  After careful review of the record and briefs,

and with the benefit of oral argument, we affirm.

## I.    BACKGROUND

### A.    Facts

The relevant facts in this appeal are straightforward and undisputed.  From

1954 to 1985, William H. Thurmon, Sr. worked primarily as a production shift

---

[*]Honorable Jose E. Martinez, United States District Judge for the Southern District of
Florida, sitting by designation.

2

supervisor at the Rayonier Pulp and Paper Mill ("Rayonier") located in Jesup, Georgia. Thurmon monitored the production equipment and supervised the line employees, which required him to walk around all areas of Rayonier.

Oftentimes, the industrial valves at Rayonier required maintenance, which typically involved, among other things, scraping gaskets off of the valves, removing packing material from the valves, and replacing the removed gaskets and packing material. Though Thurmon did not work directly on the valves, he was, on occasion, near the valves while Rayonier employees performed routine maintenance. Rayonier employees would also cut gasket material in close proximity to Thurmon. From 1955 to 1985, some of the packing material and gaskets used in the repair and maintenance of valves at Rayonier contained asbestos.

Two co-workers testified that some of the industrial valves at Rayonier were manufactured by Defendant Crane Co. Other than remembering that the Crane Co. valves were "metal" or "steel," those co-workers could not recall the specific type of Crane Co. valves used at Rayonier, nor did they associate a specific type of valve with Crane Co.

The Crane Co. valves, like all industrial valves, required routine maintenance involving the removal and replacement of gaskets and packing material. At least one co-worker testified that Thurmon would have been in close

3

proximity to the Crane Co. valves while their gaskets were being replaced. The removal and installation of gaskets from the Crane Co. valves would have created dust, potentially containing asbestos, that Thurmon could have inhaled. There is no evidence that Thurmon was in close proximity to any Crane Co. valve while its packing materials were being replaced.

Crucially, no employee testified that the replacement gaskets and packing material used to maintain and repair Crane Co. valves were manufactured or distributed by Crane Co.[1] Rather, third-party vendors supplied Rayonier with asbestos-containing gaskets and packing material. Moreover, there is no evidence that the worn gaskets and packing material routinely being replaced (during Thurmon's tenure) were the original ones installed on the Crane Co. valves.

In November 2009, Thurmon was diagnosed with mesothelioma, an asbestos-related cancer, and died the following month.

## B.    Procedural History

In April 2011, Thurmon's estate and surviving children filed an amended complaint in the State Court of Gwinnet County, Georgia against several defendants, including Crane Co., alleging causes of action for negligence, products

---

[1]As noted below, the MDL court found that no co-worker testified that Thurmon was exposed to "Crane" gaskets or packing material and, therefore, concluded that summary judgment in favor of Crane Co. was warranted with respect to any alleged exposure to Crane Co. gaskets or packing material. We defer to the MDL court's findings and conclusions regarding this issue.

4

liability, and wrongful death arising from Thurmon's alleged asbestos exposure while working at Rayonier.  On April 29, 2011, a defendant removed the action to the United States District Court for the Northern District of Georgia.  On May 16, 2011, pursuant to an order from the United States Judicial Panel on Multidistrict Litigation, the action was transferred to the Eastern District of Pennsylvania ("the MDL court") as part of MDL No. 875.

In a September 17, 2012 order, the MDL court granted in part and denied in part Crane Co.'s motion for summary judgment.  First, the MDL court found no evidence of Thurmon's alleged exposure to "Crane" gaskets or packing material.  Accordingly, the MDL court granted summary judgment in favor of Crane Co. with respect to Thurmon's alleged exposure to gaskets and packing material manufactured or distributed by Crane Co.

Next, the MDL court found that (1) Crane Co. valves were used at Rayonier; (2) the third-party component parts on Crane Co.'s valves contained asbestos; (3) Rayonier employees performed routine maintenance on Crane Co. valves, specifically gasket replacement, in close proximity to Thurmon; and (4) a reasonable jury could conclude that Thurmon inhaled asbestos fibers during the replacement of gaskets on Crane Co. valves.  However, the MDL court further found that there was (1) no evidence demonstrating that Thurmon was exposed to the original asbestos-containing component parts of the Crane Co. valves, and

5

(2) no evidence demonstrating that the replacement asbestos-containing component parts were manufactured or supplied by Crane Co.  Accordingly, the MDL court concluded that "[Crane Co.] could only be liable for this exposure if Georgia law does not recognize the so-called 'bare metal defense.'"[2]

Unaware of any decisions from the Georgia appellate courts discussing the availability of the bare metal defense, and noting that whether Georgia law recognizes the defense "is a matter of policy," the MDL court determined that remand to a court in Georgia was necessary to determine the availability of the bare metal defense under Georgia law.  The MDL court denied Crane Co.'s motion for summary judgment in part, with leave to refile for summary judgment in the Northern District of Georgia after remand.

In a January 23, 2014 order, the MDL court remanded the case to the Northern District of Georgia.  In the district court, Crane Co. moved for summary judgment on the grounds that it was entitled to the bare metal defense because there was no evidence demonstrating that Crane Co. manufactured, supplied, or designed any of the replacement asbestos-containing gaskets or packing material to which Thurmon was exposed.  In a November 21, 2014 order, the district court

---

[2]The MDL court defined the bare metal defense as follows: "whether . . . a valve manufacturer [is] liable for injury arising from asbestos-containing component parts used in connection with its valve, but which it did not manufacture or supply."

granted Crane Co.'s motion for summary judgment on the grounds that Georgia law supports the application of the bare metal defense.  This appeal followed.

## II.    DISCUSSION

### A.    Standard of Review

We review a district court's grant of summary judgment de novo, viewing all the evidence, and drawing all reasonable factual inferences, in favor of the non-moving party.  Stephens v. Mid-Continent Cas. Co., 749 F.3d 1318, 1321 (11th Cir. 2014).  We may affirm on any ground that finds support in the record. Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1364 (11th Cir. 2007).

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Although all justifiable inferences are to be drawn in favor of the non-moving party, the moving party is entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing of an essential element of the case.  Manor Healthcare Corp. v. Lomelo, 929 F.2d 633, 636 (11th Cir. 1991).

The moving party bears the initial burden of showing the court, by reference to materials in the record, that there is no genuine dispute as to any material fact that should be decided at trial.  Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1260 (11th Cir. 2004).  The moving party's burden is discharged merely by

pointing out to the district court that there is an absence of evidence to support an essential element of the non-moving party's case. See Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S. Ct. 2548, 2554 (1986). Once the moving party has adequately supported its motion, the non-movant then has the burden of showing that summary judgment is improper by coming forward with specific facts showing a genuine dispute. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986).

This case requires us to examine issues concerning the substantive law of Georgia. In rendering a decision based on state substantive law, a federal court must decide the case the way it appears the state's highest court would. Ernie Haire Ford, Inc. v. Ford Motor Co., 260 F.3d 1285, 1290 (11th Cir. 2001). Where the state's highest court has not spoken to an issue, a federal court must adhere to the decisions of the state's intermediate appellate courts absent some persuasive indication that the state's highest court would decide the issue otherwise. Id.

## B.    The "Bare Metal Defense" Under Georgia Law

According to the asbestos MDL court, the "bare metal defense" stands for the proposition that a valve manufacturer is "not liable for injuries caused by asbestos products, such as insulation, gaskets, and packing, that were incorporated into their products or used as replacement parts, but which they did not manufacture or distribute." Conner v. Alfa Laval, Inc., 842 F. Supp. 2d 791, 793

8

(E.D. Pa. 2012).  As such, the "bare metal defense" is, essentially, a causation argument.

No controlling Georgia authority unequivocally recognizes the bare metal defense.  In fact, the phrase "bare metal defense" has never appeared in Georgia's case law.  Nevertheless, we are tasked with resolving this appeal, which involves substantive questions of Georgia law, in a manner it appears the Georgia Supreme Court would.  Ernie Haire Ford, Inc., 260 F.3d at 1290.

In doing so, we need not determine whether the Georgia Supreme Court would adopt the "bare metal defense" as a bright-line rule of law that would automatically insulate from liability an entire category of defendants in asbestos cases.  Rather, as demonstrated below, application of Georgia's well-established products liability law to the particular facts of this case leads to a clear resolution of this appeal.

## C.    Relevant Georgia Products Liability Law

Under Georgia law, whether proceeding under a strict liability or a negligence theory, proximate cause is a necessary element of any product liability action.  Hoffman v. AC & S, Inc., 548 S.E.2d 379, 382 (Ga. Ct. App. 2001).  Thus, under Georgia law, to survive summary judgment, an asbestos victim must present evidence that he or she was exposed to asbestos-containing products for which the defendant is responsible.  Id.  Specifically, a plaintiff must present evidence that a

particular defendant's asbestos-containing product was used in proximity of that plaintiff.  Id.  Such evidence may include testimony of co-workers who can identify a plaintiff by name as having worked with or around a particular defendant's asbestos-containing products.  Id. at 382-83.

The Georgia Court of Appeals has stressed that the plaintiff must link a particular defendant's product to his injury in order to survive a motion for summary judgment.  See Talley v. City Tank Corp., 279 S.E.2d 264, 269 (Ga. Ct. App. 1981) ("A manufacturer has the absolute right to have his strict liability for injuries adjudged on the basis of the design of his own marketed product and not that of someone else" (emphasis added)).  Georgia law requires plaintiffs to prove exposure to a particular defendant's product in order to establish proximate cause because Georgia courts have refused to impose market-share or industry-wide liability upon asbestos manufacturers.  See Ga. Code Ann. § 51-1-11(d) ("Irrespective of privity, a manufacturer shall not be held liable for the manufacture of a product alleged to be defective based on theories of market share or enterprise, or other theories of industry-wide liability"); see also Hoffman, 548 S.E.2d at 382.

## D.    Replacement Gaskets Not Manufactured By Crane Co.

Here, we cannot say that the district court erred in granting Crane Co.'s motion for summary judgment under the particular facts of this case.  There is

evidence that industrial valves manufactured and supplied by Crane Co. were present at Rayonier during Thurmon's tenure as a shift supervisor. The component parts of the Crane Co. valves, namely the gaskets and packing material, often contained asbestos. These asbestos-containing component parts required routine maintenance that would have created airborne asbestos fibers. One co-worker testified that Thurmon was in close proximity to Crane Co. valves while gasket maintenance was being performed. No co-workers testified that Thurmon was in close proximity to Crane Co. valves while packing materials were being replaced. Thus, at best, Thurmon's exposure was to gaskets during routine replacement and maintenance. Accordingly, a reasonable jury could conclude that Thurmon was exposed to asbestos-containing dust from gaskets being replaced and used in connection with Crane Co. valves.

However, the record tells us that Rayonier purchased the replacement gaskets from third-party vendors. The record does not support a finding that any of the replacement asbestos-containing gaskets to which Thurmon was exposed were manufactured or distributed by Crane Co. While a co-worker was able to place Thurmon in close proximity to gasket maintenance being performed on Crane Co. valves, there was no evidence that the replacement gasket material was manufactured or supplied by Crane Co. Moreover, no co-worker testified that the gaskets being removed on such occasions were the original component parts of the

11

Crane Co. valves.  Thus, while the plaintiffs could show that Thurmon was exposed to asbestos-containing gaskets manufactured and supplied by third-party vendors and installed on Crane Co.'s industrial valves, the plaintiffs failed to demonstrate that Thurmon was exposed to any specific asbestos-containing gaskets manufactured or supplied by Crane Co.  As such, Thurmon's injuries were not caused by any asbestos-containing gaskets manufactured or supplied by Crane Co. Hoffman, 548 S.E.2d at 382.

## E.    Negligent Design and Failure to Warn

The plaintiffs nevertheless contend that the district court erred by granting Crane Co.'s motion for summary judgment for two reasons: (1) Crane Co. is still liable for Thurmon's injuries because it negligently designed its industrial valves by requiring that they use asbestos-containing component parts to function properly, and (2) Crane Co. is still liable for Thurmon's injuries because it failed to warn Thurmon of the dangers associated with removing and replacing the asbestos-containing component parts of its industrial valves.  Both of these arguments fail.

Georgia courts recognize a cause of action for injuries sustained on account of a manufacturer's negligent product design.  See Ford Motor Co. v. Stubblefield, 319 S.E.2d 470, 476 (Ga. Ct. App. 1984).  Specifically, "if in the normal functioning of the product as designed, such function creates a danger or peril that is not known to the user or bystander, then the manufacturer is liable for injuries

12

proximately caused by such danger." Id. (emphasis added). Accordingly, to prevail in a so-called "negligent design" claim, the plaintiff must still demonstrate that "the proximate cause of [his] injuries . . . was the original defective design." Talley, 279 S.E.2d at 269; see also Hall v. Scott USA, Ltd., 400 S.E.2d 700, 703 (Ga. Ct. App. 1990) ("[T]he injury must be the proximate result of a defect in the product which existed at the time sold") (quotation marks omitted); Carmical v. Bell Helicopter Textron, 117 F.3d 490, 494 (11th Cir. 1997) ("To prevail in a Georgia products liability action, whether based on negligence or strict liability, a plaintiff must show that the proximate cause of the injury was a defect which existed when the product was sold"). When there is no evidence that the defendant's originally designed product was defective, and there is no evidence that an injury-causing post-sale modification was required for the defendant's original product to function, then summary judgment in favor of the defendant is warranted. See Hall, 400 S.E.2d at 703-04.

The plaintiffs cannot prevail in their negligent design claim because they failed to come forward with evidence establishing causation, which is an essential element of any products liability action. Hoffman, 548 S.E.2d at 382. Specifically, the plaintiffs failed to present evidence indicating that Thurmon's injuries were caused by a negligently designed Crane Co. valve. As explained below, the plaintiffs' failure to do so proves fatal to their claim.

To iterate, in order to prevail in a negligent design claim under Georgia law, the plaintiff's injury must be the proximate result of a defect in the product which existed at the time sold.  Talley, 279 S.E.2d at 269; see Hall, 400 S.E.2d at 703. Plaintiffs allege that Crane Co.'s industrial valves were defective as sold because the design of the valves required the use of asbestos-containing gaskets to function properly.  Thus, in order to survive summary judgment, the plaintiffs had to offer some evidence that Thurmon's injuries were caused by a Crane Co. valve that required the use of asbestos-containing gaskets to function properly.  See Hall, 400 S.E.2d at 703-04; Matsushita Elec. Indus. Co., 475 U.S. at 587, 106 S. Ct. at 1356. Put another way, the plaintiffs had to offer some evidence that Thurmon was exposed to a negligently designed Crane Co. valve.  The plaintiffs failed to meet their burden.

The record demonstrates that, at some point, Rayonier would replace gaskets in some of its valves and Thurmon was exposed to a Crane Co. valve while its third-party asbestos-containing gaskets were being replaced.  However, the record does not reveal the type of Crane Co. valve to which Thurmon was exposed or what that valve was used for, let alone whether the design of that valve specified and required asbestos-containing gaskets to function properly.  The mere fact that the gaskets on Crane Co. valves were replaced with asbestos-containing gaskets from third party vendors does not mean that Crane Co. designed and specified the

14

use of only asbestos-containing gaskets for those valves, or that those valves required asbestos-containing gaskets to function. See Talley, 279 S.E.2d at 269 ("[I]f the design of [a] product has been independently altered, eliminated and replaced by a third party after the sale and injuries then result, those injuries cannot be traced to or be the proximate result of the manufacturer's original design which did not exist at the time of injury"). Without evidence demonstrating that Thurmon was exposed to a negligently designed Crane Co. valve (i.e. a valve that required asbestos-containing gaskets to function properly), a jury would be forced to speculate that Crane Co.'s negligence proximately caused Thurmon's injuries. However, "[s]peculation does not create a genuine issue of fact." Cordoba v. Dillard's, Inc., 419 F.3d 1169, 1181 (11th Cir. 2005).

The plaintiffs attempt to close this causation gap by asserting that all industrial valves manufactured by Crane Co. during the relevant time period required asbestos-containing gaskets to function properly and, therefore, one can reasonably infer that Thurmon must have been exposed to a negligently designed Crane Co. valve. But the record does not support the plaintiffs' assertion. Just the opposite. Crane Co.'s corporate representative testified that, during the relevant time period, Crane Co.'s valves did not require asbestos-containing gaskets to function properly. Moreover, the plaintiffs' own submissions contain a Crane Co. brochure specifying that gaskets for "most," but not all, "bronze and iron . . .

15

valves are cut from compressed sheet packing comprised of asbestos fiber," and that other valves, depending on their function, contained gaskets made of "tetrafluoroethylene" or "corrugated soft steel." Another Crane Co. catalogue submitted by the plaintiffs states that "[g]askets are made of various materials: rubber, asbestos composition, and metals." Thus, evidence from both parties affirmatively demonstrates that some of Crane Co.'s industrial valves were perfectly capable of functioning without the use of asbestos-containing gaskets.

The plaintiffs' attempts to otherwise raise a genuine issue of fact are unavailing. The plaintiffs repeatedly point to evidence that Crane Co. may have incorporated asbestos-containing packing material into the overall design of all of its valves during the relevant time period. But the record only demonstrates that Thurmon was potentially exposed to asbestos during the replacement of gaskets, not packing material, on Crane Co. valves. Thus, the plaintiffs' packing material evidence is irrelevant.

The sole piece of record evidence that the plaintiffs cite to actually discussing gaskets is a March 9, 1981 internal Crane Co. memorandum. The memorandum appears to involve a correspondence regarding the availability of non-asbestos substitutes for certain valves that would otherwise require asbestos-containing component parts. The memorandum does not help the plaintiffs because it only concerns a specific category of iron and steel valves, not all valves,

16

and it does not identify a type of valve or model specifically sold to Rayonier or encountered by Thurmon.

According to the dissent, the 1981 memorandum contains two phrases that, by way of inference, establish a triable issue of fact as to whether "Crane Co. generically specified that asbestos gaskets be used in all its industrial valves that utilized gaskets."  (emphasis added).  However, the inferences that the dissent attempts to draw from these phrases are speculative and unreasonable.  See Ave. CLO Fund, Ltd. v. Bank of Am., N.A., 723 F.3d 1287, 1294 (11th Cir. 2013) ("All reasonable inferences arising from the undisputed facts should be made in favor of the nonmovant, but an inference based on speculation and conjecture is not reasonable.").

The dissent first points to the third paragraph of the 1981 memorandum, which states, "If there was a corporate prohibition on asbestos gaskets . . ., then all the [Crane Co.] valve plants would be in trouble."  Even read in the light most favorable to the plaintiffs, this language only reasonably supports an inference that valves utilizing asbestos-containing gaskets were manufactured at all of Crane Co's. valve plants.  It does not, without resorting to speculation, support the broader inference that all valves manufactured by Crane Co. utilized asbestos-containing gaskets.  In fact, the record affirmatively demonstrates that Crane Co.

17

manufactured valves that utilized gaskets made of various materials such as rubber, asbestos, metals, tetrafluoroethylene, and corrugated soft steel.

The dissent also points to the last paragraph of the 1981 memorandum, which states, "Until we locate acceptable alternates, . . . we are forced to continue specifying the proven asbestos material in our products."  Even read in the light most favorable to the plaintiffs, this language only reasonably supports an inference that asbestos works well in the products that incorporate asbestos-containing component parts, and that it will be difficult to find asbestos substitutes for those specific products.  Like the first phrase cited by the dissent, it does not, without resorting to speculation, support the broader inference that all valves manufactured by Crane Co. utilized asbestos-containing gaskets.  Indeed, the memorandum does not state that Crane Co. would be forced to continue specifying the proven asbestos material in all of its products.

Without resorting to speculation, which we may not do at the summary judgment stage, the 1981 memorandum, at best, supports the narrow, undisputed assertion that Crane Co. specified asbestos-containing gaskets for use in some of the industrial valves it manufactured in 1981.  It does not support the much broader claim that Crane Co. specified the use of asbestos-containing gaskets in all industrial valves manufactured by Crane Co. during the relevant time period.

18

Having cited no other record evidence in support of their assertion that all valves manufactured by Crane Co. during the relevant time period required asbestos-containing gaskets to function, the plaintiffs failed to come forward with "specific facts showing that there is a genuine issue for trial" regarding this issue. [3] See Matsushita Elec. Indus. Co., 475 U.S. at 587, 106 S. Ct. at 1356.

In sum, the plaintiffs' entire negligent design theory of liability is premised on the wholly unsubstantiated assertion that every single industrial valve manufactured by Crane Co. during the relevant time period required asbestos-containing gaskets to function properly. If anything, the available record evidence affirmatively belies this assertion. As such, the record does not reveal whether Thurmon was exposed to a negligently designed Crane Co. valve. Without any evidence that Thurmon was exposed to a Crane Co. valve that was negligently designed when sold to Rayonier, summary judgment in favor of Crane Co. is warranted. Hall, 400 S.E.2d at 703-04.

Additionally, there is no merit to the plaintiffs' claim that they could still recover under a failure-to-warn theory of liability. Under Georgia law, "the manufacturer of a product which, to its actual or constructive knowledge, involves

---

[3]Additionally, there is no evidence that Rayonier, due to high heat conditions, purchased only valves that required asbestos-containing gaskets to function properly such that Thurmon must have been exposed to those certain Crane Co. valves with designs specifying and requiring asbestos-containing gaskets. At least one co-worker testified that he stocked the Rayonier storeroom with rubber gaskets, which are not suitable for high heat applications. Additionally, a Crane Co. brochure proffered by the plaintiffs indicates that "[m]etallic gaskets are used for intermediate and high temperatures."

19

danger to users, has a duty to give warning of such danger." Chrysler Corp. v. Batten, 450 S.E.2d 208, 211 (Ga. 1994) (quotation marks omitted).  Despite the distinct duty imposed, a failure-to-warn claim, whether grounded on a strict liability or negligence theory, requires proof that the defendant's allegedly defective product proximately caused the plaintiff's injuries.  See Wilson Foods Corp. v. Turner, 460 S.E.2d 532, 533-34 (Ga. Ct. App. 1995).  As described above, plaintiffs' claims lack the crucial element of causation, and, therefore, the plaintiffs cannot prevail.  In other words, our conclusion that the plaintiffs failed to demonstrate that a product manufactured by Crane Co. proximately caused Thurmon's injuries is a case dispositive determination that necessarily extinguishes a necessary element of any failure-to-warn claim.

### III.    CONCLUSION

Because the plaintiffs failed to produce evidence that Thurmon's injuries were proximately caused by a product manufactured, supplied, or negligently designed by Crane Co., their claims fail as a matter of law.  Accordingly, we affirm the district court's grant of summary judgment.[4]

**AFFIRMED.**

---

[4]In light of our disposition, all pending motions are denied as moot.

WILSON, concurring in part and dissenting in part:

I concur in the Majority's decision not to insert the "'bare metal defense" into Georgia's case law on behalf of the State of Georgia. According to the complaint, William H. Thurmon, Sr. "was diagnosed with, and later died from, complications associated with malignant pleural mesothelioma," which "is a rapidly debilitating and fatal form of cancer affecting the lining of an individual's lungs, the only known cause of which in North America is asbestos exposure." The bare metal defense would "automatically insulate from liability an entire category" of manufacturers of asbestos-containing products in such cases. *See* Maj. Op. at 9. There are a number of "impracticalities complicating any attempt [by a federal court] to develop federal common law in asbestos litigation." *Blackston v. Shook & Fletcher Insulation Co.*, 764 F.2d 1480, 1485–86 (11th Cir. 1985). Unless future Georgia courts explicitly or clearly adopt the bare metal defense—which is essentially a policy statement about the quantity and type of defendants Georgia wishes to hold liable—this federal court should not do so for Georgia.

Although I also agree with the Majority that "Thurmon was exposed to asbestos-containing dust from [third-party asbestos-containing] gaskets being replaced and used in connection with Crane Co. valves," Maj. Op. 11–12 (emphasis added), we disagree regarding whether Crane Co. may be held liable for

21

that exposure.  The Majority frames the issue on appeal as whether Thurmon was exposed to a defectively designed Crane Co. valve that required asbestos-containing gaskets to function properly and that proximately caused Thurmon's injuries.  *See* Maj. Op. at 12–19.  However, the relevant question on appeal is simply whether Thurmon was exposed to an asbestos-containing product for which Crane Co. was responsible.  *See Blackston*, 764 F.2d at 1481.

In order to survive summary judgment under either a negligent design or failure to warn theory of liability, the plaintiffs must show that Thurmon was exposed to a product manufactured by Crane Co., *see id.* at 1481–82, which they may do by showing that Crane Co. designed a product system in which it specified asbestos-containing component parts.  A corporate entity is legally responsible for a product in which it "ha[s] an active role in the . . . design . . . of [the] product[]."  *See Buchan v. Lawrence Metal Prods. Inc.*, 607 S.E.2d 153, 156 (Ga. Ct. App. 2004); *Davenport v. Cummins Ala., Inc.*, 644 S.E.2d 503, 508 (Ga. Ct. App. 2007) (describing a manufacturer as one who "actively participate[s] in the conception, design, or specification of the [product]").[1]  Therefore, the plaintiffs may satisfy

---

[1] No Eleventh Circuit or Georgia precedents squarely address a defendant's liability in Georgia for asbestos-related injuries arising in connection with a product it manufactured and into which a third-party component part was inserted post-sale.  Therefore, we must look to Georgia products liability principles from outside the asbestos context.  *See, e.g.*, *Fletcher v. Water Applications Distribution Grp.*, 773 S.E.2d 859, 863–65 (Ga. Ct. App. 2015) (citing general products liability concepts from outside the asbestos context within the asbestos context), *cert. granted*, *CertainTeed Corp. v. Fletcher*, No. S15G1903 (Ga. Jan. 11, 2016).

22

their burden by showing that Thurmon was exposed to an asbestos-containing product designed by Crane Co.

Additionally, the plaintiffs must show that Thurmon was exposed to Crane Co.'s product, as originally designed. Georgia courts look to a product's "design specifications" to determine a product's "original design." *See Banks v. ICI Ams., Inc.*, 450 S.E.2d 671, 673–75 & n.3 (Ga. 1994); *cf. Fletcher*, 773 S.E.2d at 863–64.

The record supports the conclusion that Crane Co. designed a valve-gasket system in which it specified asbestos gaskets that would have to be routinely replaced. In the March 9, 1981 internal Crane Co. memorandum, Crane Co.'s representative clearly stated: "Until we locate acceptable alternates, or until there is a prohibition on the use of asbestos gaskets and packings (either by OSHA/EPA or customer preferences), we are forced to continue specifying the proven asbestos material in our products." (emphasis added). The representative also stated: "If there are corporate prohibitions on asbestos gaskets and packing in Crane plants, then all the valve plants are in trouble."[2] Viewing these statements in the light most favorable to the plaintiffs, the memorandum establishes, for purposes of surviving summary judgment, that as late as March of 1981 Crane Co. generically specified that asbestos gaskets be used in all its industrial valves that utilized

---

[2] Both statements fall within the last four paragraphs of the memorandum, which, contrary to the Majority's reading, discuss asbestos gaskets and packing, generally. The first paragraph is the only one to refer to iron or steel valves and merely discusses "data circulated . . . for grafoil stem packing," as opposed to specifications for gaskets.

23

gaskets.[3]  Consequently, these memorandum statements make clear that, by original design, Crane Co.'s valve-gasket system was an "asbestos-containing product[]."  *See Blackston*, 764 F.2d at 1481.  Additionally, it is undisputed that the relevant "Crane Co. valves . . . required routine maintenance involving the removal and replacement of gaskets and packing material."  Maj. Op. at 4.  Thus, a jury could find that Crane Co.'s product, as originally designed, was an asbestos-containing valve-gasket system in which the gaskets would require routine replacement.  That third-party vendors supplied some of the asbestos gaskets does not remove Crane Co.'s potential liability because Thurmon was still exposed to Crane Co.'s valve-gasket system, as originally designed.[4]

Accordingly, there remains a triable issue of fact in this case as to whether Thurmon's exposure to Crane Co.'s asbestos-containing product resulted in Thurmon's injuries.  A manufacturer may be liable under Georgia law in a

---

[3] This evidence should be weighed against other evidence in the record by a jury, not by this court on summary judgment.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 2513 (1986); *see also Ont. Sewing Mach. Co. v. Smith*, 572 S.E.2d 533, 536 (Ga. 2002) ("[I]t is axiomatic that questions regarding proximate cause are undeniably a jury question and may only be determined by the courts in plain and undisputed cases." (internal quotation marks omitted)).

[4] More specifically, Rayonier's use of asbestos gaskets was not an alteration, elimination, or replacement of Crane Co.'s original design—or a redesign of the asbestos gaskets within that original design—because Crane Co. specified, generically, that asbestos gaskets be used in its valve-gasket system.  *See Carmical v. Bell Helicopter Textron, Inc.*, 117 F.3d 490, 494 (11th Cir. 1997) (manufacturer may be liable for negligent design so long as "the product['s] design has [not] been independently altered, eliminated or replaced by a third party after the sale of the product"); *cf. Talley v. City Tank Corp.*, 279 S.E.2d 264, 269–71 (Ga. Ct. App. 1981) (manufacturer may be liable for negligent design where the "product's original design has been merely slightly or somewhat modified" or for failure to warn where "an integral component of a product" has not been "totally redesigned and replaced").

24

negligent design claim for "intended or foreseeable uses" of its product. *Chrysler Corp. v. Batten*, 450 S.E.2d 208, 211 (Ga. 1994). A manufacturer also may be liable for failure to warn when "the normal use of its product" could result in some "nonobvious foreseeable danger[]." *Thornton v. E.I. Du Pont De Nemours & Co.*, 22 F.3d 284, 289 (11th Cir. 1994). Here, the Crane Co. valve-gasket system allegedly caused Thurmon's injuries when asbestos dust was released during routine maintenance, which was part of the system's normal, intended, and forseeable use. Therefore, it remains for the jury to determine whether Crane Co. is liable for Thurmon's injuries.

In sum, I would hold that (1) Georgia does not recognize the bare metal defense; (2) the product for which Crane Co. is legally responsible is the asbestos-containing valve-gasket system it designed; and (3) there exists a material issue of fact as to whether Thurmon's injuries arose from his exposure to Crane Co.'s product under either a negligent design or failure to warn theory of liability. Accordingly, I would reverse the district court's entry of summary judgment for Crane Co. and remand for a jury to determine whether Crane Co.'s product was the proximate cause of Thurmon's injuries.